DeBaun vs. Atchison et al.

DeBAUN vs. ATCHISON ET AL.

1. B and C took bird cages to a boat, and took a receipt from the second clerk in the name of A, to whom C was indebted. B held himself out as owner to the captain, accompanied the cages on the trip, and when the boat reached her destination, received the cages, and paid the freight. A, in such case, cannot receive the value of the cages from the owner of the boat. The receipt was taken merely as a security, and B, by the consent of A and C. made apparent owner, and in a position well calculated to impose on the officers of the boat.

## ERROR to St. Louis Circuit Court.

### STATEMENT OF THE CASE.

This case was an action in assumpsit, founded upon a contract of affreightment. There are three counts—the first and second setting forth that appellant shipped at the city of St. Louis, on board of the steamboat Amaranth, of which respondents were owners, ninety-one bird cages to be transported to the city of New Orleans, which defendants received upon said boat, and promised to transport to New Orleans for a certain reasonable reward, and then deliver the same to appellant. That appellant had ever been ready at said New Orleans to receive said cages and pay for their transportation, but that respondents have never delivered them to him and that more than sufficient time has elapsed for their transportation.

The third count is for goods, &c., to-wit: 91 bird cages sold and delivered by appellant to respondents.

Defendants pleaded the statutory general issue of coming and defending the demand of the plaintiff.

Upon the trial the plaintiff offered in evidence a receipt as follows, to-wit: "St. Louis, October 5, 1848. Rec'd of G. DeBaun, in good order ninety-one bird cages, on board of steamer Amaranth—91—Brooks, Clerk." Defendants admitted that this was the receipt of the boat; that defendants were the owners and that the boat, when the cages were shipped was bound for New Orleans and made the trip.

Merrill Davis sworn, testified that the cages were worth $192 50. On this evidence the appellant rested. Defendants then read the deposition of Brooks, who testified that at the time the cages were shipped he was second clerk of the boat—that a man by the name of Far rington brought the cages on board and told him that he was going to take them to New Orleans, and asked him about the propriety of getting them insured—that he advised him against it, but that afterwards about an hour before the boat started he came on board and told him that he had concluded it was best to get them insured and asked Brooks for a receipt for them, when Brooks asked him for his name, he replied put it in the name of DeBaun—I want to get them insured—he so made the receipt—he never saw DeBaun in the transaction. Far ringto.1 took charge of the cages, rubbed them up, put them up when they fell down, paid the freight for them at New Orleans and there received them, but produced no receipt nor was asked for any.

On the cross examination he said that a man by the name of Davison was with Farring ton when the receipt was given, but does not know which asked for the receipt, but thinks it likely that it was Davison who seemed to be the talking partner of Farrington—he knew that Davison had had various transactions with DeBaun before—he had shipped freight for him and paid an order drawn on him by Davison—thinks it likely that it was Davison who

directed that the receipt should be drawn in DeBaun's name. On the arrival of the boat at New Orleans, no one called for the cages but Farrington, but on the next trip at New Orleans, a clerk of Marsh & Ranlett came on board with the receipt and inquired where the cages were, or what had been done with them, and was told that they had been delivered to Farrington.

The deposition of P. Atchison was read, who testified that he was captain of the boat—that the cages were shipped on board by Farrington as his own property, he said they were his and were delivered to him at New Orleans—he, Farrington, made the contract for their transportation, took charge of the cages down to New Orleans. On the boat's return to St. Louis, DeBaun told him he had a claim on the cages, which was the first claim made for the cages after their delivery.

On cross examination he testified that he did not know that the receipt of the boat was out for the cages, until his return to St. Louis, when DeBaun informed him, telling him that he got himself into a scrape, as he had the receipt for the cages. DeBaun said that Davison was owing him about $250, for which he was to have the proceeds of the cages.

The deposition of Cunningham was then read, who testified that he was first clerk of the boat, that a few days before the boat started, Farrington asked him what he thought of the speculation of taking bird cages to New Orleans, that he saw him attending to the shipping of the cages and piling them away, he went down on the boat and took charge of the cages and at New Orleans paid the freight for them—he did not know that the boat's receipt was out for them—that at New Orleans on the next trip, the clerk of Marsh & Ranlett brought the receipt on board and inquired for the cages and was told they had been delivered to Farrington—that a few days before he gave this deposition he had a conversation with DeBaun who said that Davison had given him this receipt as security for a debt he owed him—that he had not yet allowed him any thing for it, nor should not unless he received something from the boat.

On cross-examination testified that had he known that the receipt was out he should not have delivered the cages to Farrington at New Orleans without producing the receipt or an order from its owner—it is the business of the second clerk to receive freight.

The deposition of Parker was read, who testified that in September 1848, Farrington brought Davison to the shop of Davis and introduced him as his partner and showed him a lot of bird cages belonging to Davis as the ones intended for New Orleans—afterwards at Memphis he saw Farrington who told him that he had the cages on the Amaranth and asked him to go and look at them. Deponent helped make the cages and their value was about $3 a piece.

Merrill Davis being then sworn testified that he made the cages, had been paid for them on $45; that they cost $195 50—that Farrington boarded with him and promised to take some cages to New Orleans for him—that Davison was his partner—that he and Davison and Farrington together, took the cages on board the Amaranth—that they were to sell them in New Orleans as his agents for commissions—that sometime after they were shipped, he met Davison in St. Louis who told him the cages had been sold well, but that he had not yet received returns but probably would next day, and then would call upon him, and told him that probably some of the boat's crew would call upon him, and advised him to be cautious what answers he gave them. A few days after he asked Davison if the cages were insured, who said they were in the Columbia office, in DeBaun's name, in his open policy—he called at that office and was told that DeBaun had no insurances there—Davison said a bill of lading was taken and was at DeBaun's office, and they went there together but DeBaun had gone to Alton by reason of some sickness or death, but his clerk showed him a bill of lading, not signed, and told him that was worth nothing—Davison then said he had the boat's receipt. DeBaun's clerk said that the cages were insured in the St. Louis office, November 17, 1848. Davison came to his shop and told him that Farrington had run off and that he wanted to settle with him for the cages, and offered his note for $50 at thirty days—that he took it and gave him the bill for the cages receipts. Davison promised that if he ever got the money

DeBaun vs. Atchison et al.

for the cages he would pay him all. In March next Davison told him he had a lot of liquors and as soon as he sold them he would pay him—he did not do it, and learning that the liquors were at Joel Small's he went there with an officer to levy upon them and there learned that the only interest Davison had in the liquors was what they would bring over and above certain fixed prices, which they were not worth. In March Davison told him if he would go to DeBaun's DeBaun would cash said note—he went there and DeBaun wrote what he then supposed and now supposes was a check, which he took to Gray & Co., bankers, who said they were in the habit of cashing such paper sometimes, but then declined because short of funds—he went back to DeBaun and told him the result. DeBaun replied, Davison is gone, what shall be done about it? and told witness that he would give him $45 for it, which he took. In February Cunningham called upon him and asked him if he was the man who had a lot of cages shipped upon the Amaranth? He replied that he was—was then asked if he had been paid? replied not—also if shipped in his name? replied no, but in that of DeBaun, and then gave a sketch of the affair. In the afternoon DeBaun came to his shop, which was the first time he had ever seen DeBaun—DeBaun asked him if his name was Davis? replied yes—was then asked if he sent a bill of cages—replied that he sent a memoranuum of the prices, marked 1, 2, 3, and so on; was then asked if he had ever made out any bill of the cages? replied he had. DeBaun then said that he would like to see his hand writing, saying that he had a bill of them and did not know but that it was a fraudulent one—he replied that he presumed it was not fraudulent for he had made out one and receipted it—was then asked if he had been paid? replied no. In September 1849, in the court house, just before the case was called for trial, DeBa n said to him that we did not want Farrington's name known in the case; he replied he believed he knew what was the obligation of an oath, that if he was asked in court he should tell about the partnership—DeBaun said yes, but he wanted him to answer only such questions as were put. September 8th, Davison came to his shop and asked him to give him a writing, that he had as good right to sell these cages as Farrington—he replied that he could see nothing why he had not and a-ked Davison to call again, who said he would and bring Mr Todd, attorney for the plaintiff, or DeBaun with him. Witness then went and took advice and was advised not to give the writing. He was informed by captain Atchison that DeBaun had said that he had received pay for the cages—on the day DeBaun paid him the $45 he said if we gain this suit we will pay you $25 more.

On cross-examination he was shown a writing as follows:

"$50.  Sт. Louis, March 9th, 1849.

"At thirty days after date pay to the order of Merrill Davis fifty dollars and charge same to account of          Your obedient servant,          D. DAVIS N.

To George DeBaun, Jr., St. Louis."

Across its face is written, "Accepted, George DeBaun, Jr.," on its b  k is written "Merrill Davis"—witness was asked if that was the paper he took and supposed was a check of which he had testified? said he could not tell—that he gave it only a glance at the time; that he then and now supposed it was a check. He was then asked if the name on its back was written by him? replied it was, he was then asked if he could now state it was the paper, he replied it was.

To all the conversations mentioned in said depositions and the testimony of Davis with these persons, at which the plaintiff is not shown present or even knowing or assenting to, the plaintiff duly objected; but his objections the court overruled, to which the plaintiff excepted.

Plaintiffs asked the court to give the following instructions:

1. From the receipt given in evidence the defendants are liable to the plaintiff for the value of the cages, unless the defendants show either a delivery of the cages to plaintiff or to some person authorized by plaintiff to receive them, which authority the defendants are to prove.

2. The acts and sayings of Farrington and Davison, not done or said in the presence of DeBaun or with his authority, the jury should entirely disregard r    and the ju y c r no. presume any such authority, but it must be proved to them by legal evidence.

3. If the jury believe from the evidence that Farrington & Dav   n were only the agents of

---

DeBaun vs, Atchison et al.

---

Davis for selling the cages and that the cages continued the property of Davis, that fact does not make the liability of the defendants to the plaintiff any less than it would be if Davis made no claim to them—nor is the liability of defendants to the plaintiff made less if the jury believe that plaintiff had the cages as security for a debt of Davison and that the plaintiff had other security.

The 1st and 2d of which the court severally refused to give, to which decision of the court the plaintiff duly excepted—3d was given.

The court then gave, of its own motion, the following instructions, to-wit:

1. The receipt given in evidence renders the defendants liable to the plaintiff for the value of the cages, (if the jury shall believe from the evidence that the same was not obtained from the defendants or their agents unfairly or fraudulently) unless the defendants show either a delivery of the cages to the plaintiff or to some person authorized by him authorized to receive them, proof of which authority lies upon the defendants.

2. The acts and sayings of Farrington and Davison not done or said in the presence of the plaintiff, or with his authority, the jury should utterly disregard, and if such authority be claimed by the defendants, it must be shown by evidence, and cannot be presumed; but such authority or what is equivalent thereto, would be sufficiently established should the jury find from the evidence that the plaintiff and Davison and Farrington acted in concert with each other, and were cognizant at the time of all that was transpiring.

3. That unless the jury are satisfied from the evidence that the plaintiff had a right to the cages in question, or a property in them, at the time the same were shiped and the receipt given, they should find for the defendants; but the receipt is proof that the plaintiff had the right of property to the cages, as against the defendants, till the contrary appears.

4. Although the receipt given is sufficient to enable the plaintiffs to recover in this suit, unless impeached for fraud, yet it is competent for the defendants so to impeach it, and show that it was unfairly obtained. If therefore the jury shall believe from the evidence that the said receipt was obtained from the defendants or their agent through fraud practised by the plaintiff or any person or persons shown by the evidence to have been acting in concert with him in that behalf, the same should be disregarded.

To the giving of each of said instructions of the court the plaintiff objected, which objections the court overruled, to which decisions of the court the plaintiff duly excepted.

The jury rendered a verdict for the defendants.

The plaintiff filed a motion for a new trial for the following reasons, to-wit:

1. Because the verdict is against the evidence and the weight of evidence,

2. Because the court erred in refusing instructions asked for by the plaintiff.

3. Because the court gave erroneous instructions.

4. Because the court admitted inadmissible testimony.

5. Because the jury erred in matters of law.

6. Because the instructions of the court were contradictory and misleading, which motion the court overruled and the plaintiff excepted to the decision. Final judgment was rendered for defendants, upon which plaintiff sued out a writ of errror from this court.

Todd & Krum for plaintiffs in error.

1. The court erred in refusing to give instruction marked 1, asked for by plaintiff and in lieu thereof the one marked 1 on its own motion. Because there is no evidence of fraud or unfairness in obtaining the receipt.

2. Instruction asked for by the plaintiff marked 2, should have been given and that marked 2 given by the court should not have been given, because there was no evidence of plaintiff's acting in concert with Davison and Farrington, nor of his being cognizant of their acts and sayings. Besides it is indefinite and

DeBaun vs. Atchison et al.

3. Instruction marked 3, asked for by plaintiff and given, and that marked 3, given by the court are conflicting, and the latter is erroneous, for the defendants canno* defeat the p ima facie case made out by the plaintiff by showing that some third person had the right and property in the cages without also showing some title, interest or authority in them derived from such third person. 11 Wend. p. 57. 11 J. R. Page 132. 13 J. R. 284. 5 Ala Rep. 199. 2 Saunders on pleading and evidence p. 182.

4. The court should not have given instruction marked 4, because there is no evidence in the case justifying it.

5. The acts and sayings between the officers of the boat and Farrington, and between Davis and Davison, and between Parker and Farrington should not have been admitted in evidence, because plaintiff was not present at them nor is there any evidence that he authorized them, or knew of them.

## HUDSON, for defendant.

The circuit court did not err in refusing instructions asked by the plaintiff; no instructions which ought to have been given were refused.

The second error is, that the court gave erroneous instructions, on this point the counsel for defendants considers a reference to the instructions a sufficient answer to this objection.

The third objection. That the court below admitted illegal evidence, is not supported by any thing apparent on the face of the record.

The fourth objection is that the court below committed error in refusing to grant a new trial. This last point it is believed is the only one in the case upon which the counsel for plaintiff relies with any hope of success. The defendants insist that if verdicts of juries fairly obtained be set aside for slight and imaginary grounds, the right of trial by jury will soon fail to meet the objects of the law. It is contended that under the provisions of the statute concerning new trials, Revised Code of 1845, page 830, the court below could not consistently have granted a second new trial in said cause. The statute expressly provides that "only one new trial shall be allowed to either party except" first when the triers of the fact shall have erred in a matter of law. Second, when the jury shall be guilty of misbehavior. It is respectfully submitted that the plaintiff in error has not shown that his case comes under either one of the exceptions mentioned in the statute. 10 Mo. Rep. 538.

## NAPTON, J., delivered the opinion of the court.

This suit was brought to recover the value of some bird cages shiped upon the steamboat Amaranth, of which the defendants were owners. The cages were taken to the boat by two men, named Farrington and Davison, and a receipt was taken from the second clerk in the name of the plaintiff. Farrington held himself out as owner to the captain, accompanied the cages on the trip, and when the boat reached her destination, New Orleans, received the cages and paid the freight. The cages, it seems, were made by one Davis, by the directions of Davison and Farrington, and Davison was indebted to the plaintiff, and this was the ostensible reason for having the receipt taken in the name of DeBaun, the plaintiff.

The whole case turned upon a question of fraud or authority, and the instructions given to the jury on this head are not objectionable.   The only objection urged to them is, that there was no evidence authorizing any such instructions, but after a verdict against the plaintiff, such an objection would not be entitled to much weight.

To justify the verdict of the jury in this case, we do not think it was necessary to implicate the plaintiff in any actual or intended fraud. It is sufficient that by the consent of the plaintiff, Farrington was placed in a position very well calculated to impose upon the officers of the steamboat.   He was the apparent owner of the freight, to every one except the second clerk, the avowed owner.   He was evidently authorized by Davison to receive the cages and sell them, and it is not to be wondered at, that the jury believe that the plaintiff was aware of this authority.   There was certainly some negligence on the part of the second clerk in not calling for the receipt, when the freight was demanded by Farrington, but under the circumstances, it is not remarkable.

Upon a careful examination of the testimony, the verdict of the jury will not seem surprising.   We should scarcely expect a different result, if a new trial was awarded.   Without at all impeaching the motives of the plaintiff, we think there is evidence enough to show that the receipt was taken merely as a security, and that the principal, Davison and the plaintiff, both permitted Farrington to assume a position in the transaction which was well calculated to mislead the most wary.

Judgment affirmed.