HENRY McNICHOLS, Respondent, v. LEWIS NELSON, B. F. HAMMETT AND OTTO MENNE, Appellants.

St. Louis Court of Appeals, May 12, 1891.

1. **Practice, Trial:** VARIANCE: SPECIAL DAMAGES. The fact, that a verdict is for special damages which were not pleaded, does not invalidate the verdict on the ground of a fatal variance between the pleadings and the proof. When special damages are not pleaded, it is incumbent upon a party to object to evidence thereof, when offered, upon that ground, if he desires to avail himself of the objection.

2. **Principal and Agent:** OSTENSIBLE AUTHORITY OF AGENT. A party dealing with an agent has a right to rely in good faith upon the apparent authority of the agent, and it is not material whether the agency is general or special. And, where A was entitled to a lease of land from B, and was also engaged in negotiations for the purchase of the land from B, and where A sent a messenger to B with a verbal message that he would have nothing further to do with the purchase, but the message delivered by the messenger was that A would have nothing more to do with the property, it was held that B had the right to rely upon the message as delivered.

3. **Trespass:** LIABILITY OF JOINT TORT FEASORS. Where one person trespasses upon land, and does so at the instance and as the tool of two others, all three are liable to the owner for the damages occasioned by the trespass.

4. **Instructions:** QUALIFICATION OF ONE INSTRUCTION BY ANOTHER. If one of two instructions, given upon the same point, is misleading, and the other is proper, the objectionable character of the first is not obviated by the second, unless, on reading the two together, the first is necessarily qualified by the second in regard to its tendency to mislead.

5. **Practice, Appellate:** WAIVER OF OBJECTION TO VERDICT AS EXCESSIVE. An appellant cannot object in this court to a verdict as excessive, when he has not raised the objection by motion for new trial.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

REVERSED AND REMANDED.

*Christian & Wind,* for appellants.

( 1 ) The court erred in trying the cause on a theory different from that alleged in the petition. *Melvin v. Railroad,* 89 Mo. 106 ; *Welsh v. Stewart,* 31 Mo. App. 376. (2) On the theory of the case as made by the court, there is no evidence to support the verdict against any of the defendants. (3) The evidence of Hammet. as to what McNichols' agent told him was competent 1 Parsons on Contracts [7 Ed.] pp. 42, 43, 44, 45 ; Story on Agency, sec. 73, and note, secs. 126, 127, and note and sec. 130 ; Mechem on Agency, sec. 284, p. 187 ; sec. 288, p. 191 ; *Rice v. Groffman,* 56 Mo. 434; *Robinson v. Walton,* 58 Mo. 380. (4) There is no evidence under any theory to support the verdict against Hammett & Nelson. Greenl. Ev., sec. 68.

*Jos. S. Laurie,* for respondent.

ROMBAUER, P. J.—This is an action to recover damages, caused to the plaintiff by the act of the defendants

in taking and withholding from him forcibly the pos-
session of certain premises.  The petition is framed so
as to recover exemplary damages likewise, alleging
malice in addition to force, but the feature of malice
was withdrawn by the court from the consideration of
the jury.  The plaintiff is a merchant.  His petition
states that, at the date of the alleged trespass, he had
commenced the erection of a building on the premises
invaded, which the act of defendants prevented him
from completing.  The compensatory damages claimed
by the plaintiff are for losses in business, and expenses
for store rent and storage of goods traceable to the
cause above stated, and the jury found a verdict in his
favor for $2,000.  The defendants, appealing, complain
of the following errors: *First.*  That the cause was
tried on a theory other than the one made by the peti-
tion.  *Second.*  That the court erred in rejecting and
admitting evidence.  *Third.*  That the court erred in
its instructions to the jury.

The evidence tended to show the following facts :
Prior to the grievances complained of, the plaintiff held
the premises as lessee of one Lucas under a lease for ten
years, expiring June 30, 1886.  This lease contained a
condition of forfeiture for non-payment of taxes when
due.  A few days prior to the expiration of this lease,
Lucas agreed with the plaintiff to renew it for ten years,
and caused a renewal lease to be executed and to be
delivered to the plaintiff.  At that time some special
taxes were due on the property, but it does not appear
that either the plaintiff or Lucas knew the fact, or that
their payment had been demanded from the plaintiff.
The plaintiff upon examination of the renewal lease
discovered an objectionable clause in it, and took it
back to Lucas for the purpose of having the clause
stricken out, but the plaintiff testified that he was
ready and willing to keep the lease, with the objection-
able clause, if Lucas should decline to strike it out.
Lucas agreed to strike the clause out, and told the

plaintiff he would leave the lease for the plaintiff with his agents. While the lease was thus in possession of Lucas for the purposes aforesaid, he sold the property (July 9, 1886) to the defendants, Nelson and Hammett, informing them of the lease to plaintiff and leaving the instrument in their possession. The plaintiff, who heard of the sale, thereupon called upon Hammett and demanded his lease. He was asked whether he did not wish to buy the property instead of leasing it, and replied that, if suitable terms could be made, he would prefer to buy the property. Negotiations were then begun for the sale of the property by defendants, Hammett and Nelson, to plaintiff, but no terms were agreed on in writing, and the negotiations failed to lead to a sale. The plaintiff claims that the day succeeding the last conversation he had with Hammett touching a purchase, he sent his clerk to Hammett with a verbal message, informing him that he would have nothing more to do with the *purchase;* the defendants claim that the plaintiff's messenger told Hammett that he would have nothing more to do with the *property*, and offered proof to the effect that such was the tenor of the oral message delivered; this proof the court rejected, and the defendants excepted, and still except. Several days after this message was sent, the plaintiff called upon Hammett accompanied by a witness and demanded the lease. Hammett replied that he had no lease belonging to the plaintiff; that he had bought the property and intended to do with it whatever he pleased, and that plaintiff could not build on it. There is some confusion about dates in the testimony, but there is evidence in the case leading to the inference that shortly, if not immediately, after this last conversation the attorney of the defendants, Hammett and Nelson, called upon the defendant Menne, then a minor, and offered to sell him the property; that the defendant Menne at once agreed to buy it for a consideration of $10,000, for which he executed his promissory notes, paying $100 in

cash, and that thereupon the defendants, Hammett and Nelson, on the twenty-first of July, 1886, executed and delivered a memorandum of sale to Menne, which among other things recited that "the said party of the second part (Menne) agrees and binds himself to commence immediately and erect a brick building on said lot," and, also, recited that "the said party of the second part can take immediate possession of the said lot for the purposes therein mentioned." This memorandum bore date July 1, but was not executed until July 21, 1886.

Shortly after the execution of this memorandum, probably on the twenty-second of July, Menne called upon the plaintiff and informed him that he had bought the lot, and the plaintiff told him, "I wish you luck," or "I wish you luck to your purchase." The plaintiff at that time had a canvas sign on the lot, announcing that he had removed his business, but would resume it at that place. This sign was torn down by Menne's employes without the consent of the plaintiff, according to the plaintiff's evidence, and with his consent, according to the defendants' evidence. It was replaced by the plaintiff and again torn down by Menne, and replaced with a sign of his own, stating, " Parties wishing to occupy these premises will have a building erected to suit. Apply to Otto Menne, 1012 Market street." It was also in evidence that the plaintiff and the Mennes, father and son, were rival traders in the same vicinity, and that the relations between them were strained.

The plaintiff instituted suit for specific performance against Lucas, Nelson and Hammett, to the October term, 1886, to compel the execution of the lease to him. The object of this suit was to have the lease delivered by Lucas to the plaintiff declared in force, and to obtain damages for its being withheld. In that suit such proceedings were had, that, on the fifteenth day of June, 1887, the court made a decree declaring the lease which

is set out therein to be in force, but awarding no damages. After obtaining this decree the plaintiff proceeded with the erection of his building, and he thereafter completed it in March, 1888. Menne never did anything further with the lot from the date of its sale, or its pretended sale, to him in July, 1886, than to put up the sign on it which is hereinabove described, and to fence the excavation which the plaintiff had commenced on it in July, 1886. In June, 1887, he served a notice upon the defendants, Hammett and Nelson, rescinding the contract of purchase made by him in June, 1886, on the ground of his minority at the time.

I. The first error assigned must be ruled against the defendants. The variance, if there was one, between the petition and proof was one simply affecting the question of damages. The petition claims certain special damages, which the court ruled out. The plaintiff then gave evidence of certain other damages, but no objection was made to the evidence of such damages, when offered, on the ground that they were not damages claimed in the petition, nor on the ground of surprise, nor on any ground. This evidence the record shows went in without objection. While the damages thus claimed are special, and should have been set out in the petition, it was incumbent upon the defendants, when the evidence was offered, to object to it on the ground that they were not thus set out. Had the objection been made, the plaintiff might have amended his petition and thus avoided it. *Griveaud v. St. Louis Cable & Western Ry. Co.*, 33 Mo. App. 465. The objection now made, when analyzed, is not that plaintiff's theory of recovery was changed, but that the elements constituting his measure of damages were varied. As, under the code, the court may grant any relief consistent with the allegation made, the objection of a change of theory between the pleadings and relief is not applicable to the case at bar.

II.   The second assignment is based on the rejection by the court of the offer of the defendants to show the tenor of the message delivered by the plaintiff's agent to the defendant Hammett.   The plaintiff claimed that the message sent was that he would have nothing more to do with the *purchase;* the defendants claimed that the message delivered was that he would have nothing more to do with the *property.*   The question in this connection is not whether the messenger was a special or general agent, but what was the apparent authority bestowed upon him by his principal.   A party dealing with an agent has a right to rely in good faith upon his apparent authority, and it is not material whether the agency is general or special.   Mechem on Agency, sec. 284; *Rice v. Groffman,* 56 Mo. 434.   The plaintiff claims that the rejection of this evidence was proper, because the decree in the specific performance suit precluded the defendants from asserting that the plaintiff had abandoned the lease.   But the question was not whether the plaintiff had abandoned the lease, but whether the defendants, Hammett and Nelson, were justified in believing that he had abandoned it.   If on the faith of such belief they had sold the property free from the incumbrance of the lease, and their vendee had taken immediate possession, it is not conceivable how they could be held liable for their vendee's taking possession of the property by force or otherwise.   It is true there was evidence tending to show that, subsequent to the delivery of this message, and prior to the execution of the memorandum of sale, the plaintiff notified the defendants that he claimed the lease, but the truth of this evidence is not conceded ; and, as the dates are not absolutely fixed by anything in the record, we must conclude that the court committed error in the rejection of this evidence.   Had this evidence been admitted, the following instruction, offered by the defendants and refused by the court, should have been given:   "The

court instructs the jury that, if they believe from the evidence that, at the time Hammett and Nelson sold the lot to Menne, they understood and believed that McNichols proposed to have nothing further to do with the same, then they must find a verdict for said Hammett and Nelson."

III.   The defendants offered an instruction in the nature of a demurrer to the evidence.   This we hold was properly refused.   There was evidence tending to show that the defendants, Hammett and Nelson, knowing of the plaintiff's claim under the lease, executed the memorandum of sale to Menne for the very purpose of depriving the plaintiff of the possession to which the lease entitled him.   The particular terms of the memorandum of sale made to Menne, the fact that he was an infant and not responsible on his notes, which furnished the only substantial consideration of the sale, and Menne's subsequent conduct in keeping possession of the property without hinderance from his codefendants, and without paying anything, justified the inference that he was a mere tool in the hands of his codefendants, and that he knew the purposes for which he was thus used.   If this be so, then all three defendants are liable to the plaintiff.   *Wall v. Osborn*, 12 Wend. 39. The fact that taxes were due and unpaid on the first lease, and that the non-payment of taxes was ground of forfeiture, was wholly foreign to this case.   The right of forfeiture, if any existed, was not insisted on by Lucas, and the plaintiff does not claim under the first lease, which did not even contain any covenants for renewal, but under the second lease, which was granted to him by Lucas in 1886, which had been delivered to him, and which he never surrendered.   The non-payment of the special tax bill by the plaintiff did, therefore, in no way affect plaintiff's right of recovery, and no motion for a nonsuit could have been predicated on that ground.

IV. But we think the court erred in giving the plaintiff's first instruction, which reads as follows: "If the jury believe from the evidence that the plaintiff, on or about the twentieth day of July, 1886, was in possession of the premises in question, and that, on or about said date, defendant Menne, against the wishes of plaintiff and without his consent entered upon said premises and took possession thereof as in his own right, then said defendant was a trespasser; and if said acts of Menne were done in pursuance of the authority of defend·ants, Hammett and Nelson, then they were cotrespassers, and plaintiff is entitled to a verdict against all of said defendants."

This instruction was unquestionably misleading as in one sense there could be no question at all but that Menne acted in *pursuance of the authority* of his codefendants, since the memorandum of sale was *authority* to him. Under this instruction the defendants, Hammett and Nelson, could have been held liable, even though the jury found that they acted in perfect good faith and under a justified belief that the plaintiff had abandoned all claim to the property, which is not the law. The court of its own motion gave an instruction to the jury in which the words *direction and instigation* are used, in lieu of the word authority used in the plaintiff's instruction. It is claimed by plaintiff's counsel that the instruction given by the court of its own motion cured the error, if any, in plaintiff's instruction, since all the instructions should be taken and construed together; but this is only the case when one instruction necessarily qualifies the other. Here the court's instruction does not purport to be a qualification of plaintiff's instruction, since the words *direction and instigation* are not used as stating any necessary condition precedent to liability, and hence do not limit or explain the word *authority* used in plaintiff's instruction.

V. An argument is also strongly pressed upon us that the damages, under the instructions of the court

touching their measure, are excessive. No such objection is made in the motion for new trial, and, therefore, the question is not properly before us. In view of the retrial of the case we make this suggestion: The plaintiff was hindered in his possession for a period of less than one year from July, 1886, to June, 1887, and it would seem that this time furnished the basis for the computation of damages. That he paid taxes and ground rent in the interim can make no difference, since he would have paid the same ground rent and probably higher taxes, had he completed his building in 1886. These outlays, therefore, are not to be added to the rental value of the contemplated building in any event. If the rental value of the building, less interest upon its cost, is the proper measure of damages, the time for which such damages are assessable could not under the evidence in this case exceed one year.

The judgment is reversed and the cause remanded. All the judges concur.