## SANDERS et al. v. CHARTRAND, Appellant.

### Division One, November 12, 1900.

1. **Estoppel in Pais: PLEADING: SUIT ON NOTES.** Estoppel *in pais* is an affirmative defense and must be specifically pleaded by the party seeking its protection. In this suit, which was a plain action at law on promissory notes, the answer pleaded *non est factum*, and the reply was a general denial. *Held,* that there was no issue in the case upon which the court could base an instruction on the theory of estoppel *in pais.* (Overruling Bank v. Branch–Crookes Saw Co., 104 Mo. 425.)

2. ———: ———: COURSE OF DEALING: KNOWLEDGE: SCOPE OF AU-THORITY. A building and loan association is not estopped to deny that its secretary had no authority to execute certain negotiable notes in its name unless the facts show that said association so held out such secretary to the payees thereof, by its course of dealing with them or with others, as to induce them to believe he was au-

thorized to execute such notes as its agent. Nor will any act of the secretary estop the association to deny his authority unless it is brought home to its knowledge or repeated so often that notice to the association is implied from its having taken the benefit of such act. And in this case the evidence is reviewed and it is *held* that it does not show any such course of dealing or knowledge or actual or apparent authority in the secretary to execute the notes.

3. Appeals: DISMISSAL OR AFFIRMANCE. Where the case comes to this court upon a complete transcript, a motion to dismiss the appeal or affirm the judgment for failure to file "an abstract setting out so much of the record as is necessary to a complete understanding of all the questions presented to this court for decision," will not be sustained. Where a complete transcript has been filed here, section 812, Revised Statutes 1889, does not apply.

4. ———: ABSTRACT: WHAT SHOULD CONTAIN. It is better that the abstract set out the ultimate facts proved than that the testimony be set out *in haec verba* or in the narrative form.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

REVERSED AND REMANDED.

*Kinealy & Kinealy* for appellant.

(1) The petition in this case states a cause of action upon promissory notes, and in order for plaintiffs to recover it was necessary for them to allege and prove that the notes sued on were executed by the North End Building and Loan Association. Showing only that they were attested by the secretary is not sufficient for that purpose. Cole v. Armour, 55 S. W. Rep. 476; Smith v. Roach, 59 Mo. App. 115; Cox v. Bishop, 55 Mo. App. 135; Simmons H. Co. v. Grocer Co., 64 Mo. App. 681; Famous S. & C. Co., v. Iron Works, 51 Mo. App. 72; First Nat. Bank v. Hogan, 47 Mo. 472; 3 Am. & Eng. Ency. of Law (2 Ed.), p. 273. (2) Plaintiffs' first instruction is erroneous because it authorizes a

recovery on a state of facts other than those alleged as the cause of action in the petition.    If drawn on the theory of an estoppel on the part of the Building Association to deny the execution of the notes, it is clearly erroneous, because no issue of estoppel was raised by the pleadings.    Moreover, the evidence did not tend to prove facts sufficient to constitute an estoppel.    Huston v. Tyler, 140 Mo. 252; Ferneau v. Whitford, 39 Mo. App. 311.

*O. J. & R. Lee Mudd* for respondents.

(1) In support of our motion to dismiss:    (a) Defendant, although presenting here no assignment of errors proper, as required by the rules, yet asked at the trial an instruction (Defendant's refused numbered 1) in nature of a demurrer to the evidence, and argues here that the court erred in refusing it.    This calls for all the evidence.    Hilz v. Railroad, 101 Mo. 42; Isaac v. Lumber Co., 47 Mo. App. 30.    (b) And where the point is sought to be made that the trial court erred in refusing an instruction in the nature of a demurrer to the evidence, all the evidence should be set forth in the abstract. And an abstract failing under such circumstances to set forth all the evidence is insufficient to a "complete understanding" of "all the questions presented to this court for its decision." Trimble v. Wollmann, 62 Mo. App. 541; R. S. 1899, sec. 870; Rules of Supreme Court, 13, 15, 16. (c) The respondent is not required to bring up the evidence in an additional abstract, but if the abstract appear insufficient for a full and complete understanding of "all (not some of) the questions presented to this court for decision," the appeal will be dismissed.    Garrett v. Coal Mng. Co., 111 Mo. 279; Brand v. Cannon, 118 Mo. 595.    (2)    Even if the instructions are wrong, the verdict and judgment are right, and, in the interest of justice, should be affirmed.

MARSHALL, J.—This is a suit on five notes made by the North End Building and Loan Association, to the order of the plaintiffs, the first dated February 8, 1896, for $400, the second dated March 26, 1896, for $650, the third dated October 6, 1896, for $525, the fourth dated November 9, 1896, for $1,550, and the fifth dated December 10, 1896, for $2,500, all bearing seven per cent interest from date.

The answer is a verified plea of *non est factum* and a special plea of want of consideration, coupled with a general denial. The reply is a general denial.

The suit was originally instituted in 1897 against the North End Building and Loan Association, but that association was dissolved by a decree dated April 13, 1898, and Mark R. Chartrand appointed receiver thereof, and the suit was revived against him. From 1892 until August, 1897, one John C. Obert, was secretary of the North End Building and Loan Association, and during the same time he was also secretary of the North St. Louis Building and Loan Association. During the same period Charles James was the president of the North End Building and Loan Association.

The notes in suit grew up in this way. The plaintiffs from time to time loaned money to the North St. Louis Association and received from Obert, with whom all the dealings were had, notes of that Association therefor. Some time about 1894 the plaintiffs desired to change their loans from the North St. Louis to the North End Association. This was done by the plaintiffs surrendering the notes of the North St. Louis Association to Obert its secretary, and by Obert as its secretary drawing the check of the North End Association to his own order or that of some one else and having the check indorsed by the payee, and then issuing to the plaintiffs the notes of the North End Association.

The record does not disclose whether or not the books of the North St. Louis Association showed that its notes had

been paid, but it shows, vaguely, that the books of the North End Association did not show these notes to the plaintiffs among its bills payable. The record does not show clearly how much the plaintiffs had loaned the North St. Louis Association at that time. The notes sued on, are renewal notes, except perhaps the last dated December 10, 1896, for $2,500, and only a part of this note appears to represent any money ever loaned by the plaintiffs to the North St. Louis Association. The books of the North End Asosciation did not show any of these transactions. The directors of the North End Association authorized the president and secretary to borrow money and to issue notes therefor. Every one had implicit confidence in Obert and he transacted the business of the association pretty much as he pleased. When the president's signature to a note or check was needed it was made out by Obert and by him taken or sent to the president for his signature and he signed it without question. Obert testified that he signed these notes, as secretary, and that he was, to a certain extent, familiar with James's signature, and that the signatures to these notes looked like Mr. James's; and again he was asked: "Q. Will you say you saw him (James) sign any notes at all issued to Sanders?" and he answered: A. "Yes, I know he signed some of them." Mr. James admitted the general course of business above pointed out, and said he had no recollection of ever signing these notes; but that from an inspection of the notes themselves he would say he had not signed them. George Hilke, one of the directors of the North End Association, testified that, in 1895, Sanders spoke to him about the notes and he spoke to Obert about them and Obert said they were notes of the North St. Louis Association and showed him the books of the two associations and the books so showed, and this satisfied the witness. Afterwards Sanders showed him the notes and he saw they were the notes of the North End Association. He told the presi-

Sanders v. Chartrand.

dent, James, about it, privately, about two years before the failure and James said he knew nothing of it. About a week or two after the failure he brought up the subject of those notes at a meeting of the board of directors, and at first the directors did not want to believe there were any such notes. "Afterwards they said it was all right; he had the notes all right." Obert said he used the money so borrowed in the business of the North End Association.

In order to understand the theory upon which the parties tried the case in the circuit court it is necessary to set out in full the instructions asked by them respectively and given and refused by the court.

On behalf of plaintiffs the court instructed the jury as follows:

"1. The jury are instructed that if they believe and find from the testimony in this case that Obert, at the time of making the notes sued on in this case, was the secretary of the North End Building and Loan Association and as such entrusted with the custody of its seal and the general management of its business and in such capacity was either authorized, by express resolution of the board of directors or with their knowledge and assent permitted to borrow money for the purpose of said building and loan company and to issue for such loans the notes of said company executed by its president and secretary and attested by its seal; and you believe that under such circumstances said Obert, as such secretary, obtained of plaintiffs, for the purposes of said association, sums of money, and issued in equal amounts and delivered to plaintiffs therefor the notes sued on in this case as and for the notes of said association, and that this was done by Obert, in the regular course of his business as such secretary, and at the office of said association; and you further find, from the evidence, that plaintiffs are now the holders of such notes, and that they are unpaid by said association, then

your verdict must be for the plaintiffs as to such notes, and it is immaterial to such verdict under such circumstances, whether said Obert after so obtaining such money properly accounted therefor to said association or not.

"2. The court instructs the jury that, although you should find that as to one or more of the notes sued on no cash money passed from plaintiffs to Obert as secretary of the North End Building and Loan Association, as the consideration for such notes, yet, if you find that at the time Obert was also secretary of the North St. Louis Building and Loan Association, and plaintiffs, being holders of said notes of said North St. Louis Association, indorsed and delivered the same to Obert as a consideration for such notes of the North End Association, and that Obert, as secretary of said. North St. Louis Association, cancelled said North St. Louis notes and drew checks on said North St. Louis Association and then, as secretary of the North End Association, received money from the North St. Louis Association, such receiving was a sufficient consideration for such notes of the North End Association issued to plaintiffs with like effect as if plaintiffs had in the first instance directly delivered such money to Obert as such secretary.

"3. The jury are instructed that even though you should find and believe from the testimony that Charles James, as president of the North End Building and Loan Association, did not sign the notes sued on, yet if you believe and find from the testimony that Obert issued said notes to plaintiffs under the circumstances stated in the instructions number 1, 2 and 3 given by the court, and plaintiffs received them in good faith without knowledge that James had not signed them, then your verdict should be for plaintiffs, notwithstanding the name of Charles James signed to said notes was not in fact signed by said James or with his authority."

The fourth instruction given related to the quantum of

plaintiff's recovery and is not material here.

On behalf of the defendant the court gave the following instruction:

"The court instructs the jury that if they believe from the evidence that prior to the delivery to plaintiffs of the notes here sued on, plaintiffs, or either of them, had loaned money to the North St. Louis Building and Loan Association, and had received therefor the notes of said association, and that on the maturity of said North St. Louis Building and Loan Association notes same were delivered to John C. Obert and that thereupon and without any other consideration the said John C. Obert delivered to plaintiffs, or either of them, notes purporting to be executed by the North End Building and Loan Association and that any of the notes here sued on so delivered by said Obert to plaintiffs, or either of them, are mere renewals of any such latter notes so delivered to plaintiffs or either of them, then as to such of the said notes here sued on the jury must find for the defendant."

The defendant asked and the court refused to give the following instructions:

"1. The court instructs the jury that under the law and the evidence they must find for the defendant on each of the causes of action in plaintiff's petition set forth.

"2. The court instructs the jury that the burden is upon the plaintiffs to prove by a preponderance of the evidence that the name of Charles James as same appears on each of the notes here sued on was signed by Charles James in person or by some one authorized by him to sign his name thereto.

"3. The court instructs the jury that if they believe from the evidence in this case that the name of Charles James on any of the notes here sued on and read in evidence was not signed by Charles James in person or by some one au-

thorized by him to sign his name to same then as to such note or notes the jury must find for the defendant.

"4.   The court instructs the jury that there is no evidence that John C. Obert had any authority to sign the name of Charles James to any of the notes sued on in this case."

The jury returned a verdict for the full amount claimed with interest, aggregating $6,034.97, and defendant perfected this appeal.

## I.

The first and second instructions given for the plaintiffs and the instruction given for the defendant bear upon the plea of want of consideration and the evidence introduced thereunder, and correctly state the true law applicable thereto.

The third instruction given for the plaintiff and the second, third and fourth instructions asked by the defendant and refused by the court, bear upon the issue of *non est factum.*   That given for the plaintiffs instructs the jury that the plaintiffs are entitled to recover upon the notes sued on "under the circumstances stated in instructions numbered 1, 2 and 3 given by the court" (doubtless referring to the two instructions given for the plaintiffs and the one given for the defendants) even if James did not sign them, if the plaintiffs received them in good faith without knowledge that James had not signed them, and those asked by the defendant and refused by the court, declared that the defendant was not liable unless the notes were signed by James or by some person authorized by him to sign his name and that there is no evidence in the case that Obert had authority to sign James's name.

The third instruction given for the plaintiffs was evidently predicated upon the theory that the defendant is estopped, by matter *in pais,* from denying the proper execution

Sanders v. Chartrand.

of the notes by James. Three reasons are apparent why the plaintiffs' third instruction is erroneous: first, there was no estoppel *in pais* pleaded by the plaintiffs; second, there is absolutely no evidence disclosed by this record to support such a plea of estoppel *in pais;* and third, the facts and circumstances stated in the first and second instructions given for the plaintiffs or in that given for the defendant do not relate to the execution of the notes, but only to the consideration therefor, and would not constitute an estoppel *in pais,* no matter what theory the jury found to be true.

Estoppel *in pais* is an affirmative defense and must be specifically pleaded by the party seeking its protection. [Messersmith v. Messersmith, 22 Mo. 372; Bray v. Marshall, 75 Mo. 327; Noble v. Blount, 77 Mo. 235; Avery v. Railroad, 113 Mo. 561; Throckmorton v. Pence, 121 Mo. 50; Cockrill v. Hutchinson, 135 Mo. 67; Bank v. Doran, 109 Mo. 40.] In this case the petition charged the execution of the notes, the answer pleaded *non est factum,* and the reply was a general denial. No attempt was made by the plaintiffs to plead an estoppel *in pais.* Therefore there was no such issue in the case upon which to predicate the third instruction given for the plaintiff. The trial court in giving this instruction evidently followed Bank v. Branch-Crookes Saw Co., 104 Mo. 425, where it was held under circumstances identical, in effect, with the pleadings in this case, that is, the suit was upon a note, the answer was in effect *non est factum* and the reply a general denial, that evidence of estoppel *in pais* was admissible for the plaintiff. But that decision is not in harmony with the previous and subsequent decisions of this court on the subject, and must therefore be held not to correctly state the law in this State.

## II.

Even if the facts and circumstances stated in the first

and second instructions given for the plaintiff or those stated in the instruction given for the defendant had been properly pleaded they would not constitute a good plea of estoppel *in pais*, for they do not in any way refer to a course of business between the plaintiffs and the defendant which would amount to a holding out to the plaintiffs the right of Obert to sign James's name to these notes or to any other instrument.   In fact, no course of dealing is shown thereby.   The act referred to was a single act, that of transferring plaintiffs' loan from the North St. Louis Association to the North End Association, and not to a course of dealing.   It does not appear that such an act was ever done between plaintiffs and Obert or between any other person and Obert at any other time, or that the defendant ever knew of even this one act of Obert's. Hence such facts if properly pleaded would not bring this case within the rule that where a principal holds out a person as his agent authorized to bind him, or by a course of dealing with third persons has induced them to believe such a person is his agent, he is estopped to deny the fact of agency, or the manner of doing business usually adopted by the agent. [DeBaun v. Atchison, 14 Mo. 543 ; Nicholson v. Golden, 27 Mo. App. 132; McNichols v. Nelson, 45 Mo. App. 446 ; Baker v. Railroad, 91 Mo. 152 ; Johnson-Brinkmann Com. Co. v. Railroad, 126 Mo. 345 ; DeBerry v. Wheeler, 128 Mo. 84.]   Moreover, no act of the agent will estop the principal unless it is brought home to his knowledge or repeated so often that notice to the principal is implied from his having taken the benefit of such act.   [Alt v. Grosclose, 61 Mo. App. 409.] And the act of the agent must be within the scope of the agent's duty or within the scope of the duties the principal has held out the agent to have power to perform.   [Harrison v. Railroad, 50 Mo. App. 332 ; Fougue v. Burgess, 71 Mo. 389.] In all such cases the agent has *apparent* authority which he has exercised without objection from the principal, and this

constitutes a holding out, or more properly speaking, a course of dealing, which binds the principal, by making it unconscionable for him to deny the agent's power.

In this case there is an entire absence of any evidence even tending to prove any such estoppel *in pais*. The board of directors had authorized the president and secretary to borrow money. The matter of securing loans had been left by the president to the secretary. But the evidence of debt, the checks and notes requiring the president's signature, had always, and by an universal course of business, been signed by the president himself, and he had given the secretary no power to sign his name; nor does it appear he ever did so before, even if it be conceded that he did so in this case, as to which the evidence is conflicting, and therefore it was a question of fact for the jury whether James signed these notes himself, like he did generally without any investigation or question because of his implicit confidence in the secretary, or whether the secretary or some one else signed James's name. The defendant is not shown to have known or had express or implied notice, of this or any similar act performed, in its behalf or on behalf of James, by Obert, and therefore it can not be said that the defendant had held Obert out as having authority to sign James's name, or that the course of business of the defendant gives color to any such act of Obert, and hence Obert had neither authority or apparent authority to sign James's name to these notes, if he did so.

The circuit court therefore erred in giving the third instruction for the plaintiffs and in refusing to give the second, third and fourth instructions asked by the defendant.

## III.

Plaintiffs' "motion to dismiss appeal or affirm judgment for failure to comply with the rules" 12, 13 and 16, was

Sanders v. Chartrand.

taken with the case. This motion is based, principally, upon an alleged failure of the appellant to file an abstract setting forth "so much of the record as is necessary to a complete understanding of all the questions presented to this court for decision."

This case is here upon a complete transcript. Therefore the penalty of an affirmance, provided by section 812, Revised Statutes 1899, does not apply. It is only in cases where the complete transcript, or in lieu thereof a certificate of judgment, is not filed in this court in proper time, that the judgment may be affirmed. A failure to file a proper abstract is punished by the penalties provided by section 813, Revised Statutes 1899, and by the rules referred to by dismissing the appeal or continuing the case at the option of the respondent.

The abstract of the complete record filed by the appellant in this case sets forth enough of the record to enable the court to understand the questions presented for decision. It does not set out the testimony *in haec verba* or in the narrative form, but it does set out the ultimate facts proved and this is not only the proper method of procedure, but it is to be commended, in that, it enables the court to understand the case without wading through a voluminous record to pick out the real facts that lie scattered through the whole testimony. It would be a great aid to the court, a great saving of time, to court and counsel, a saving of expense, and tend to a better and more expeditious determination of the cases, if the law only required a statement of the ultimate facts to be certified to the appellate court. For then the unnecessary bitterness often engendered between counsel as to whether a particular fact was or was not in the case, and the burden that is now cast upon the court to read hundreds and sometimes thousands of pages to find out whether such disputed fact is or is not disclosed by the record, would be entirely done away with

and counsel and court could more profitably be employed in ascertaining and declaring the true legal principles involved in the case.

The motion to affirm or dismiss is overruled.

The judgment of the circuit court is reversed, solely for the giving and refusal of the instructions referred to and the case is remanded. *Robinson* and *Valliant, JJ.,* concur; *Brace, P. J.,* concurs in all except the first paragraph.