SANDERS et al. v. NORTH END BUILDING AND LOAN ASSOCIATION; CHARTRAND, Appellant.

Division One, December 23, 1903.

1. **Question for Jury:** PLEA NON EST FACTUM. Whether or not there is sufficient evidence to support the plea of *non est factum* to a suit on notes, is a question for the jury, where there is any substantial evidence to support the verdict, and it is not such on its face as to show passion or prejudice or misconduct on the part of the jury.

2. **Erroneous Evidence:** HARMLESS. However immaterial testimony admitted in evidence may be, if it could not possibly have affected the verdict, it was not reversible error.

3. **Notes:** NON EST FACTUM: CONCLUSIVENESS OF MAKER'S TESTIMONY. It is not error for the court to tell the jury that the evidence of the witness who swears he did not sign the notes is not conclusive upon them, but that they must find from his and all the other evidence in the case whether he did or not.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. Zachritz,* Judge.

AFFIRMED.

*Kinealy & Kinealy* for appellant.

(1) There was no evidence before the court on which to base the admission of the notes sued on, and they should have been excluded and the jury should have been instructed at the close of plaintiff's case that on the evidence he could not recover. (2) The notes

sued on were not submitted to the jury for comparison with genuine signatures or writings of Charles James; no comparison was made by the jury, and no witnesses testified that, of their own knowledge, or as the result of a comparison with genuine signatures or writings of Charles James, made by them, the signatures to the notes, or any of them, were genuine. R. S. 1899, sec. 4679; Bank v. Hoffman, 74 Mo. App. 206; 2 Starkie on Evidence (2 Ed.), 375; 2 Phillips on Evidence (5 Ed.), 512, side page 610 and note 483, in which "Comparison" is fully defined; Travis v. Brown, 43 Pa. St. 12; Morrison v. Porter, 35 Minn. 426; Matter of Gordon, 50 N. J. Eq. 397; State v. Scott, 45 Mo. 305. (3) The court erred in permitting witness Hilke to testify to the statements alleged to have been made to him by plaintiff, as to the existence of notes of North End Building Association claimed to be held by the plaintiffs, when Hilke was merely a director of the company. 4 Thompson on Corporations, secs. 5221, 5228; Hyde v. Larkin, 35 Mo. App. 365; 3 Clark on Corporations, p. 2204. (4) Undue and unfavorable prominence is given to the testimony of witness James, who was not a party to the cause, in instruction No. 2 asked by plaintiff, requiring exceptional consideration of it when determining its credibility and casting suspicion on it. Tibbe v. Kamp, 154 Mo. 583; 11 Ency. Pl. and Pr. (2 Ed.), 187.

*O. J. Mudd* for respondents.

(1) The court did not err in overruling motion to strike out parts of reply, but even if it did, it was waived by appellant's going to trial and cured by the action of the court at the commencing of the trial in reversing its former ruling on the motion, and confining the trial to the issue of the genuineness of James's signature. Mumford v. Keet, 154 Mo. 36; Davis v. Boyce, 73 Mo. App. 563; Gardner v. Crenshaw, 122 Mo. 79; Coffman v. Walton, 50 Mo. App. 404. (2) The notes were

properly admitted in evidence. Suydam v. Coombs, 15 N. J. L. (3 Green) 133. (3) The court did not err in admitting in evidence the abandoned answer of defendant. Spurlock v. Railroad, 125 Mo. 404; Anderson v. McPike, 86 Mo. 293; Schad v. Sharpe, 95 Mo. 576. (4) The court did not err in giving plaintiff's instruction 2. Bertram v. Railroad, 154 Mo. 639; Hull v. St. Louis, 158 Mo. 618; Baker v. Railroad, 147 Mo. 168; State v. Darrah, 152 Mo. 522; Gordon v. Burris, 153 Mo. 234. (5) The jury had a right to find the signatures of James to the notes sued on from comparison with other signatures of James in evidence and admitted to be genuine, and this with or without the aid of expert opinions. 1 Greenleaf on Ev. (15 Ed.), sec. 578, p. 723; State v. Thompson, 141 Mo. 408; State v. Scott, 45 Mo. 302; Rose v. Bank, 91 Mo. 399; Springer v. Hull, 83 Mo. 693.

MARSHALL, J.—This is a suit upon five promissory notes, aggregating $4,625, dated between February 8 and December 10, 1896, and alleged to have been signed by Charles James, the president of the defendant association. The answer is a plea of *non est factum*, verified as the statute requires. The reply is a general denial, coupled with a plea of estoppel, but upon the trial the court limited the case to the plea of *non est factum*. There was a verdict for the plaintiff for the amount claimed, with interest, from which the defendant appealed. The facts will be discussed in the opinion.

## I.

The principal contention of the defendant is that, "There is no sufficient evidence to support plaintiff's case and no merit in his claim."

The question of whether the evidence is sufficient is for the jury and the trial court to decide. In actions

at law this court looks to the evidence only far enough to determine whether there is or is not any substantial evidence to support the verdict and judgment. If there is any such substantial evidence, and the verdict is not such as to show on its face that it was the result of passion, prejudice or misconduct of the jury, nor such as to shock the judicial sense of justice, this court will not interfere. "It is not enough that there is an insufficiency of evidence," and "the fact that the verdict is not such as the appellate court would have reached upon the conflicting evidence adduced, will not warrant a reversal." [James v. Ins. Co., 148 Mo. l. c. 16.]

The defendant tacitly concedes that there is some substantial evidence to support the verdict, but shows very persuasively that the great preponderance of the evidence is against the verdict. But the fact remains that there is some substantial evidence to support the verdict, and that the jury and the trial court decided against the defendant. So under the rule that obtains in this court, the judgment will not be reversed on this ground.

The plaintiff sued on five promissory notes, aggregating $4,625, which he alleged and testified represented money he had loaned to the association. The notes purported to be signed by Charles James as president of the association. The defense is that the signature of Charles James is a forgery. One Obert was the secretary of the association and transacted the business with the plaintiff. In the fall of 1897, Obert defaulted and absconded. The solvency of the association was questioned, and the plaintiff became solicitous about his money. He went to see James about the matter, and told him he had the notes and showed them to him and asked him what he thought about them. James replied that they were as good as gold. James then left the plaintiff. The latter pursued the matter, however, and overtaking James, said to him, "James, you know that you signed them notes?" James took the notes, went to

the window, put on his spectacles, examined the notes and said, "They might be a little bit different, but I can't swear I didn't sign it."

The plaintiff further testified that the first suggestion he had that there was any question about the genuineness of James's signature was after Obert had absconded, and McCullom had been appointed secretary, and McCullom said it might be that James had not signed the notes, but that he supposed the association would have to pay them anyway, because Obert was secretary and he had given them to the plaintiff.    The plaintiff also testified that he showed the notes to Hilke, one of the directors of the association.

For the plaintiff, one Lieb, a bookkeeper of the association, testified that the plaintiff frequently brought money to the office to be loaned to the association, and that he saw some of these notes to Sanders lying on Obert's desk.   August Denning, the office boy of the association, testified  that Obert  frequently sent  notes by him to James to be signed, and that he remembered one such note that was payable to Sanders, but could not say whether or not it was one of the notes in suit.   The plaintiff also offered in evidence an abandoned answer of the defendant, in which the defendant pleaded a want of consideration for the notes.

The notes were then offered in evidence, and were admitted, and handed to the jury for their inspection. The defendant demurred to the evidence, the court overruled the demurrer, and the defendant excepted.

To sustain the issues on its part the defendant called Charles James, the former president of the association, and had him identify his signature to nine checks, and defendant handed the checks to the jury for inspecction.

He then testified that none of the notes in suit were signed by him; that Sanders showed him the notes, just before Obert absconded, and he said to him, "I have my very serious doubts about this being my signature;"

that up to that time he had heard nothing about any forgeries.   On cross-examination he was shown a number of notes, some of which he said he had signed and some he said he had not signed; at least one of the genuine notes was to the plaintiff, for some $1,350.   He said that the first he knew of these notes was when Hilke called his attention to them at a meeting of the directors held at his house, just after Obert was removed and McCullum was appointed, and that this occurred about two months before his conversation with the plaintiff about the notes.

The defendant offered in evidence a resolution of the association constituting the president, vice-president and secretary a committee, with authority to borrow money for the association, to be evidenced by notes executed by the president and secretary.   The defendant also proved by Wieshahn, an expert in handwriting; by Cummings, a former bookkeeper for James & Co.; by McCullum, the secretary of the association, and by Richardson, a former partner of James, that the signatures to the notes in suit are not James's signatures.

In rebuttal, the plaintiff, over the defendant's objection, read the testimony of George Hilke, a director of the association, who, after testifying to the fact that the plaintiff originally had his money loaned to the North St. Louis Building Association, and afterwards changed it to the defendant association, said that the plaintiff told him about a year before the failure that he had these notes; that he did not show them to him until after the failure; that he did not know James's signature and could not say whether these notes were signed by James or not.

Upon this showing it can not fairly be said that there is no substantial evidence to support the verdict and judgment.   The case made by the plaintiff in chief was by no means clear or strong or convincing, but there was evidence sufficient to take the case to the jury.   The defendant identified and offered in evidence the various

checks signed by Charles James, and thereby afforded the jury a legitimate basis of comparison by which to judge for themselves whether the notes in suit were signed by James or not. Formerly only such writings as were properly in a case to prove some issue in the case or for a legitimate purpose and having a direct bearing upon the case, could be used as a basis of comparison by which to judge the genuineness of a paper or writing or signature that was in question in the case. [State v. Thompson, 132 Mo. l. c. 325.] But afterwards this rule was changed by statute, as it is now provided by section 4679, Revised Statutes 1899, as follows: "Comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine shall be permitted to be made by witnesses, and such writings and the evidence of witnesses respecting the same may be submitted to the court and jury as evidence of the genuineness or otherwise of the writing in dispute."

This provision of the statute was applied upon the second trial of the Thompson case, supra, and it was contended that the act could not be constitutionally so applied, because it was passed after the commission of the act of the defendant then on trial, but this court held the contention to be untenable. [State v. Thompson, 141 Mo. l. c. 416.]

This act was also considered by the St. Louis Court of Appeals in Bank v. Hoffman, 74 Mo. App. 203, and it was pointed out by BOND, J., in that case, that the act is a literal copy of the English act of 1854, and that under the English act, it was the rule that the jury was entitled to make a comparison and to judge therefrom as to the genuineness of the writing in dispute.

The defendant, therefore, furnished the jury such a basis of comparison by introducing the checks signed by James that were conceded to be genuine, and the jury, therefore, had substantial evidence upon which

to base a verdict, even if there had been none in the case before.

The verdict may not have been such as this court would have found if it had been the trier of the facts, but the jury returned it, the trial court approved it, there is substantial evidence to support it, and, therefore, this court will not interfere.

## II.

The admission of Hilke's testimony that Sanders told him he had his money invested in the North St. Louis Association, and drew it out and invested it in the defendant association, is assigned as error.

Such testimony was clearly immaterial to any issue joined in this case, and should have been excluded.   But it is incomprehensible how the defendant could have been prejudiced thereby.  The court had drawn the line strictly and had limited the inquiry entirely to the genuineness of James's signatures.   The jury could not possibly have been so ignorant as to be influenced in the determination of that issue, by any consideration of whether the plaintiff originally loaned his money to the North St. Louis Association or not.   Jurors, at least so long as no doubts are raised by the record, must be presumed to have at least sense enough to see that such testimony had no bearing upon the only issue that was submitted to them in this case.

This court does not believe this error materially affected the merits of this action and under the statute (sec. 865, R. S. 1899) it is not reversible error.

## III.

The admission of the abandoned answer of the defendant, wherein want of consideration for the notes is pleaded, is assigned as error.

This evidence was inadmissible, but its admission was not reversible error, in view of the manner in which

the court restricted the issues that were submitted to the jury.

## IV.

The second instruction given for the plaintiff is challenged, because it gives undue and unfavorable prominence to the testimony of James, who it is said is not a party to this suit.

The instruction is as follows:

"2. The jury are instructed that, in determining the issue, whether or not the signature 'Charles James,' appearing upon the notes in evidence, is the genuine signature of the president of the North End Building and Loan Association at the date of the said notes, you are not bound by the fact that the witness, Charles James, is the person whose signature is under consideration, to consider the testimony of said James himself on this issue as conclusive or controlling; but you must consider the testimony of said James, and that of each and every other witness, bearing upon this issue, and give to such testimony and all the evidence such weight and credibility only, as in your judgment, and under your oath as jurors, you think the same entitled to. And in determining upon your verdict you must consider all the evidence and every fact and circumstance in evidence before you; and if, after fully considering the testimony of all the witnesses and all the facts and circumstances developed by the evidence, you are reasonably satisfied that said James, as president of said association, did sign the name 'Charles James' to said notes, then your verdict must be for plaintiffs."

This instruction practically told the jury that under the issue as to whether the notes were signed by James or not, his testimony was not conclusive, but that the jury must decide that issue according to all the evidence, and facts and circumstances of the case. It would have been error for the court to refuse to so de-

clare. The testimony of no witness is conclusive upon a jury. Under the issues it was impossible that James should be anything else than prominent in the case, but it can not be said that this instruction made him or his testimony "unfavorably" prominent.

This is the second appeal to this court of this case. [Sanders v. Chartrand, 158 Mo. 352.] Two juries have returned verdicts for the plaintiff in this case.

There is nothing in the record to throw any doubt upon the honesty of the plaintiff's claim. No reversible error appears to have been committed in the second trial of the case. Under the practice of this court in such cases, the judgment of the circuit court must be affirmed. All concur.