## CHOCTAW, O. & G. R. CO. v. JACKSON et al.

(Circuit Court of Appeals, Eighth Circuit. December 11, 1911.)

No. 3,531.

1. APPEAL AND ERROR (§ 724*)—SPECIFICATIONS OF ERROR—REQUISITES.

Assignments that the court erred in sustaining the judgment of the United States Court for the Central District of the Indian Territory, and in entering judgment in favor of plaintiffs and against defendant, were insufficient.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2997– 3001; Dec. Dig. § 724.*]

2. RAILROADS (§ 297*)—ACCIDENTS TO TRAINS—DEATH OF CONDUCTOR—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action for death of a railroad conductor by his train being struck and derailed by the train of another company at a railroad crossing, evidence *held* to require submission to the jury of the question of decedent's contributory negligence and of the negligence of the operatives of the colliding train.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 944–953; Dec. Dig. § 297.*]

3. APPEAL AND ERROR (§ 254*)—REVIEW—EXCEPTIONS.

An objection that the complaint in an action for wrongful death, alleging that plaintiffs were the lawful wife and children of deceased, did not allege that they were his heirs at law and all of his heirs, raised, if at all, by general demurrer to the amended complaint, could not be reviewed on a writ of error where no error was saved on the question.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1486, 1487; Dec. Dig. § 254.*]

4. APPEAL AND ERROR (§ 232*)—REQUEST FOR PEREMPTORY INSTRUCTION——SCOPE—QUESTIONS NOT RAISED AT TRIAL.

The rule that the denial of a peremptory instruction includes every ground on which it ought to have been granted, whether stated or not, and a presumption will ordinarily be indulged that the motion embraced insufficiency of evidence on any clear issue on which the case was submitted to the jury, does not apply when it involves the necessity of holding that the court ought to have peremptorily instructed the jury on a matter of law in direct conflict with the theory on which the parties tried the case, so as to authorize a reversal for lack of proof of a negative fact that there had been no administration granted on decedent's estate to which no objection was taken, either at the trial, on a motion for a new trial, or until the filing of a supplemental brief in an intermediate court of appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1351, 1368; Dec. Dig. § 232;* Trial, Cent. Dig. §§ 211–222, 691–693.]

In Error to the Circuit Court of the United States for the Eastern District of Oklahoma.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Annie Jackson for herself, and as next friend of her minor children, against the Choctaw, Oklahoma & Gulf Railroad Company. Judgment for plaintiffs (182 Fed. 342), and defendant brings error. Affirmed.

H. B. Low (C. O. Blake, R. J. Roberts, and Stuart & Gordon, on the brief), for plaintiff in error.

J. A. L. Wolfe (Wolfe, Hare & Maxey, on the brief), for defendants in error.

Before ADAMS and SMITH, Circuit Judges, and REED, District Judge.

SMITH, Circuit Judge. On January 2, 1902, the tracks of the Missouri, Kansas & Texas Railway, hereafter called the M., K. & T., and the Choctaw, Oklahoma & Gulf Railroad, hereafter called the Choctaw, crossed substantially at right angles at South McAlester, Ind. T. The tracks of the M., K. & T. at that point extended almost due north and south and those of the Choctaw substantially east and west. There was a heavy upgrade on the M., K. & T. immediately north from the crossing. To the west of the main track of the M., K. & T. was what is known as a "passing track" or siding, which extended from a very considerable distance south of the crossing to a point north thereof and across the line of the Choctaw. The entrance from the M., K. & T. main track to the passing track was by means of a switch about 15 to 30 feet south of the crossing. To the west of this passing track was a Y, and the Choctaw crossing over the M., K. & T. main line and passing track was between the legs of this Y and nearer the south than the north one. At the main line crossing north of the Choctaw and east of the M., K. & T. was a common station of the two roads, and just across the Choctaw and east of the M., K. & T. was a hotel or dining hall. South of that and east of the M., K. & T. was a lunchroom. There was ordinarily a gate maintained at the crossing which was so arranged that, when it was open as to one road, it was of necessity closed across the other. This gate was so equipped with lights at night as to warn approaching trains if it was closed as to them. On January 2, 1902, this gate was broken down, and it became necessary after nightfall to use lantern signals at the crossing. About 8 o'clock that night train No. 102 on the M., K. & T. came from the south into South McAlester bound for Muskogee.

It was under charge of James C. Jackson as conductor. This train had a number of empty cars which were to be set out for the Choctaw. It first stopped down near the lunchroom referred to, and Conductor Jackson went up to the station. In a short time he came out and his train pulled north, cutting off the caboose and leaving it on the main line just south of the switch into the passing track, and the balance of his train, consisting of nearly 40 cars, went north on the main line until the rear car probably cleared the Choctaw track from 10 to 30 feet. While it was going north Jackson threw the switch so as to turn the cars in on the passing track, and simultaneously signaled his train to stop and back up, which it did. In the meantime

a switch engine had been standing on the Choctaw west of the M., K. & T., with its front toward the east and with four freight cars in front of it and one caboose behind. It attempted to cross, and the trains came in collision, and the rear car of the M., K. & T. train was derailed, and carried around against the station, and Conductor Jackson was crushed between the car and the station. Both his legs were cut off close to the knees, and he died in about 36 hours.

This action was brought in the United States Court for the Indian Territory, at Durant, by Annie Jackson, widow, and Nora Jackson, Clara Jackson, and Willie Jackson, minor children of James C. Jackson, against the M., K. & T. and the Choctaw to recover damages for the death of said Jackson. On motion of the defendants the venue was changed to the Atoka Division. After this change the plaintiffs filed an amended complaint against both roads, in which they alleged that Annie Jackson was the lawful wife of the said James C. Jackson, and that the other plaintiffs were his children, and that there was no administration on the estate of the said Jackson, and alleged that on or about the 2d day of January, 1902, the said James C. Jackson approached said station at South McAlester with a train from the south bound for the station of Muskogee; that it was necessary according to his orders and instructions that certain cars in his said train should be set out or left at South McAlester; that he ordered and directed to place said cars upon a side track lying along the west side of the railway track of the said M., K. & T. Railway Company and immediately south of the point where the side tracks of said defendants crossed; that, after receiving the proper signal from said watchman, the said James C. Jackson, with the view of carrying out his said instructions in reference to setting out said cars, caused his said train to be cut and the north end thereof to which said cars were then attached to be moved north over said crossing for the purpose of permitting the switch at the north end of said side track to be opened so that on the proper signal the engineer operating the engine drawing his train should back said cars over said crossing into and over said switch and onto said side track aforesaid, and that, just after his said train had cleared said crossing, some employé of the M., K. & T. Railway Company did signal his engineer to back up for the purpose aforesaid, and while his train was in backward motion it came into collision with another train of the defendant the Choctaw, Oklahoma & Gulf Railroad Company, which was then and there being moved over said crossing from the west towards the east; that the said James C. Jackson was standing upon the depot platform near the southwest corner of the depot building, said platform and building being situated north of the track of the Choctaw, Oklahoma & Gulf Railroad Company and east of the track of the Missouri, Kansas & Texas Railway Company; that, when the south end of said James C. Jackson's train came into contact with the moving cars of the Choctaw, Oklahoma & Gulf Railroad Company, the same were caught and suddenly thrown from the track in an easterly direction around and against the southwest corner and south side of said building catching the said James C. Jackson and throwing him between

the edge of one of said cars and a window sill of one of the windows in said depot building, thereby crushing, breaking, and cutting his legs at about and above the knee, and otherwise injuring him so that shortly thereafter he died. Plaintiff shows to the court that neither James C. Jackson nor any other person engaged with him in operating said train of the Missouri, Kansas & Texas Railway Company was guilty of any negligence or of any act proximately contributing to or causing the death of the said James C. Jackson; that the train of the said James C. Jackson was then and there entitled to the use of said crossing, and the employés of the Choctaw, Oklahoma & Gulf Railroad Company were not entitled to the same, and were guilty of negligence in running their said train over said crossing at said time and under the circumstances; that, when the train of the said James C. Jackson passed over said crossing from the south to the north, it stopped with the rear end thereof within 30 feet of said crossing, and that according to rules, regulations, customs, and usages which were in force and had been in force for a long while the employés operating the train, engines, and cars of said Choctaw, Oklahoma & Gulf Railroad Company had no right to proceed or attempt to make said crossing, and in attempting to pass over the same as they did under the circumstances they violated such rules, regulations, customs, and usages and were guilty of negligence. Plaintiff further shows to the court that the employés of said defendant Choctaw, Oklahoma & Gulf Railroad Company engaged in operating the engine and cars with which the train of said James C. Jackson collided were guilty of negligence, in this: that they saw and were in a position to see the rear end of the train of said James C. Jackson, knew where the same had been stopped, saw the switch, and were in a position to see the switch which had been thrown to permit said cars to be placed upon said side track and from the position of the rear end of said Jackson's train and from the fact that said switch had been opened said employés in operating said other train were guilty of negligence in rushing their train over said crossing when they knew or by exercise of ordinary care should have known that said Jackson and those engaged with him in operating said train were not through with said crossing and would attempt to back said train over the same as they actually did; that, if they did not see and know all these things, they were guilty of negligence therein. They were further guilty of negligence in failing to keep a lookout, and in failing to observe and obey the signals of the watchman at said crossing.

The defendant, the Choctaw, filed its combined demurrer and amended answer. The demurrer was general, and for the reason that the amended complaint did not state facts sufficient to constitute a cause of action against the defendant. In its answer it denied that the plaintiff Annie Jackson was the lawful wife of said James C. Jackson and the other plaintiffs were his children, and denied that there was no administration of the estate of said Jackson; denied that at the station of South McAlester the line of the M., K. & T. Railway Company extended north and south, and that the Choctaw line crossed the same from east to west; denied that on and prior

to said date said railway companies had erected and maintained at said crossing a gate and had in their employ a gatekeeper whose duty it was to attend said crossing and move said gate as became necessary in accordance with the rules prescribed by said defendants; denied that on the occasion in question said gate was not being operated, but that said defendants had placed at said crossing a watchman whose duty it was by signals which were understood by the employés of both defendants to control the operation and movement of trains, engines, and cars over the same; denied that on or about the 2d day of January, 1902, the said James C. Jackson approached said station of South McAlester with a train from the south bound for the station of Muskogee; denied that it was necessary according to his orders and instructions that certain cars in said train should be set out and left at South McAlester; denied that, when the south end of James C. Jackson's train came into contact with the moving cars of the Choctaw, the same were caught and suddenly thrown from the track in an easterly direction around and against the southwest corner and south side of said depot building, catching said James C. Jackson and throwing him between the edge of one of the cars and a window sill of one of the windows of said depot building, thereby crushing him, breaking and cutting his legs at about and above the knees, and otherwise injuring him so that shortly afterwards he died; denied all negligence upon the part of said defendant; and alleged the contributory negligence of the deceased.

The case was tried to a jury in November, 1905. At the close of plaintiff's evidence they dismissed as to the M., K. & T. Railway Company and the jury returned a verdict against the Choctaw, on which judgment was rendered. The company then took the case on error to the United States Court of Appeals in the Indian Territory, and it was there pending at the time of the admission of Oklahoma as a state when, by operation of law, it passed to the Supreme Court of the new state. May 12, 1908, the company removed the case from the Supreme Court of Oklahoma to the Circuit Court of the United States for the Eastern District of Oklahoma, where the same was affirmed and is now brought here by the company on writ of error. This action is under laws of Arkansas made applicable to Indian Territory by act of Congress, as follows:

"Sec. 5225. Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or company or corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony.

"Sec. 5226. Every such action shall be brought by and in the name of the personal representatives of such deceased person, and if there be no personal representatives, then the same may be brought by the heirs at law of such deceased person; and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury

may give such damages as they shall deem a fair and just compensation, with reference to the pecuniary injuries resulting from such death to the wife and next of kin of such deceased person: Provided, that every such action shall be commenced within two years after the death of such person. Act March 6, 1883." Mansf. Dig. §§ 5225, 5226 (Ind. T. Ann. St. 1899, §§ 3430, 3431).

There are only four errors specified in this court as follows:

Assignment No. 1. The court erred in sustaining the judgment of the United States Court for the Central District of the Indian Territory, sitting at Atoka.

Assignment No. 2. The court erred in entering judgment herein in favor of the appellees and against the appellant.

Assignment No. 3. The court erred in holding that the failure of the appellees, plaintiffs below, to prove the nonappointment of a personal representative of the estate of James C. Jackson had been waived by this appellant.

Assignment No. 4. The court erred in overruling appellant's first assignment of error which said assignment was as follows, to wit: Because the court erred in not instructing the jury to render a verdict for the defendant as specially requested by the said defendant.

[1] While the first and second specifications of error are clearly insufficient to command consideration by us, the court has nevertheless carefully considered all of the points argued, which are; first, that the negligence as alleged of the Choctaw was not the cause of the injury complained of; second, that Jackson was guilty of contributory negligence; third, that it was not alleged that the plaintiffs were all the heirs at law of Jackson; fourth, that it did not appear from the evidence that the plaintiffs were all the heirs at law of Jackson; fifth, that it did not appear from the evidence that there had been no administration upon the estate of Jackson.

[2] There were a large number of witnesses to the accident. Four engine crews and trainmen and others were present. There is perhaps more than the usual conflict as to the facts. It was dark. All the witnesses did not see everything that took place. Manifestly some one had blundered, and there was a temptation on the part of all who might be thought to be responsible to acquit themselves. The evidence cannot be reconciled, but there was evidence from which the jury had the right to find that, before Jackson started to move his train north over the crossing, he explained to the crossing flagman his purpose to move north to obtain access to the switch, and then back on the passing track, and was given the crossing for that purpose; that while he was so engaged the Choctaw train tried to go across notwithstanding oral warning from Jackson and repeated signals from the flagman to stop; that these warnings and signals were in time for it to have stopped and avoided the accident; that Jackson's train was visibly cut in two by the separation of the caboose from the rest of his train; that the well-known signal with the whistle was given from his engine that it was going to back up; that, as soon as Jackson discovered the Choctaw was going to attempt to go through between his caboose and the balance of his train notwithstanding the warnings, he crossed the M., K. & T. track so his signals could be

seen by the men on his train and gave the proper signal for his train to stop, but too late to avoid the accident. Under these circumstances, it cannot be said as a matter of law that the jury was not right in finding that the accident was directly due to the negligence of the Choctaw as alleged, and that Jackson was not shown to be guilty of contributory negligence.

[3] The next contention is that, in the absence of administration, the law under which the suit was brought required that it be brought by the heirs at law, and that the allegation of the complaint was that the plaintiffs were the lawful wife and children of the deceased, and that it was not alleged that they were the heirs at law, must less that they were all the heirs at law. If this question was ever raised at all, it was raised by the general demurrer to the amended complaint, but no error has been saved on that question.

[4] It is next contended that the proofs did not show that the plaintiffs were all the heirs at law of deceased.

The plaintiff, Mrs. Annie Jackson, was a witness, and testified that Mr. Jackson was 39 years old when he died, and that they were married in 1886; that the three other plaintiffs were the children and the only children of said marriage. Her testimony therefore shows that the deceased was only 23 or 24 years old when they were married. Of course, it is not impossible that he was married before and had children by a former marriage. It would therefore have been well for the plaintiffs below to have specifically negatived the existence of heirs by any such prior marriage. As a second marriage after the birth of children as early as 23 or 24 is at least unusual, the jury, in the absence of further evidence, could certainly rightfully infer that the plaintiffs were all the heirs at law.

The most difficult question in this case arises out of the failure of the plaintiffs below to affirmatively show that there had been no administration upon the estate of Jackson. It was so alleged by them in their complaint and was denied in the answer, and proof should have been offered in support of the allegation of the complaint, and there is none. But how did the company save this question? It is claimed this was done by a request at the close of the evidence as follows: "You are instructed to find a verdict for the defendant in this case." There is a conflict in the authorities as to whether error can be predicated upon the overruling of a demand for a directed verdict where there is no suggestion or specification as to in what respect evidence is lacking for the other party. The request in this case was, as to brevity, the limit possible to reach in such matters. It did not contain even the ordinary suggestion of the lack of evidence to sustain a verdict for the plaintiff. In the Seventh Circuit it is held that it is not error to overrule a motion to hold the evidence insufficient to sustain the action and direct a verdict for the defendant when the motion specifies no particular in which there is supposed to be a lack of evidence. Adams v. Shirk, 104 Fed. 54, 43 C. C. A. 407.

In the First Circuit a different rule prevails. In O'Halloran v. McGuirk, 167 Fed. 493, 93 C. C. A. 129, it is said:

"The defendants moved the Circuit Court that a verdict be directed for them, which was refused. The motion was entirely general on the whole record, without any specification of the reasons why a verdict should be so directed. It occasionally happens that the various Circuit Courts of Appeals refuse to entertain so general a motion. This is usually on the ground that the Circuit Courts of Appeals are shy of entertaining on appeal matters which were not brought to the attention of the trial court, and justly so; but this practice has no necessary application where it is apparent that the same propositions have been fairly brought to the attention of both tribunals. Such is the fact here as to everything which we will determine."

The view in the Sixth Circuit was expressed by the present Justice Lurton in Louisville Railway Company v. Womack, 173 Fed. 759, 97 C. C. A. 566, as follows:

"But it is said that the denial of a peremptory instruction includes every ground upon which it ought to have been granted, whether stated or not. We have never regarded this court as concluded by the reasons stated by a trial judge for his action upon a motion for a peremptory instruction upon the close of the evidence. If the ruling was right upon any ground, it would be folly to reverse. Neither have we required that the grounds or reasons upon which such an instruction was asked should be always stated by counsel and shown by the record, when such denial is relied upon as error under an exception reserved, as seems to be the practice in the Seventh Circuit Court of Appeals. Adams v. Shirk, 104 Fed. 54, 43 C. C. A. 407. We have indulged the presumption, whether such a motion was allowed or disallowed, that it embraced an insufficiency of evidence upon any clear issue upon which the case was submitted to the jury. But we think this practice should not apply when it involves, as it does here, the necessity of holding that the court ought to have peremptorily instructed the jury upon a matter of law in direct conflict with the theory upon which the parties had tried the case, and with the charge of the court that the statute was applicable, to which no exception was taken. It is not just to the parties, nor to the trial judge, to permit this question to be raised for the first time in this court, when, as here, it is shown upon the record that the converse of the point now made was ruled by the court below, and no objection reserved."

The question of just how specific the motion must be, has never been expressly passed upon in any opinion by this court, but the practice has undoubtedly been the same as that which has prevailed in the Sixth Circuit announced by Judge Lurton, and that, for the purpose of this case, will be treated as the correct holding. Simerson v. St. Louis & S. F. R. Co., 173 Fed. 612, 97 C. C. A. 618; Pohlman v. C., R. I. & P. R. Co., 182 Fed. 492, 105 C. C. A. 36.

It is a settled rule of the Supreme Court, and of this as of all other appellate courts, that no question will be considered on appeal which was not called to the attention of and ruled on by the trial court. Walker v. Sauvinet, 92 U. S. 90, 23 L. Ed. 678; Newcomb v. Wood, 97 U. S. 581, 24 L. Ed. 1085; Board of Commissioners v. Sutliff, 97 Fed. 270, 38 C. C. A. 167; Lesser Cotton Co. v. St. Louis Railway Co., 114 Fed. 133, 52 C. C. A. 95. In this connection it is important to bear in mind the distinction between questions and arguments, reasons, and authorities bearing thereon. Wholly new arguments may be made, new reasons may be assigned, and new authorities may be cited for the first time in the appellate court, and will be considered, and the court itself will not be limited by the arguments or reasons urged in the court below or adopted by it, but substantive ques-

tions must be called to the attention of the court below, and passed upon by it, or they will not be here considered.

It is true that the allegation that no administration had been had upon the estate of Jackson was a necessary averment, that it was made and specifically denied, and the burden was upon the plaintiffs to prove this negative allegation. It is also true that, if the company had intended to becloud its denial, it could not have better done so. It surrounded it with specific denials of numerous indisputable facts. It denied that Annie Jackson was the lawful wife of the deceased; denied the other plaintiffs were his children; denied the truths of geography as to the lines of the M., K. & T. and its own at South McAlester; denied the construction of the gate at the crossing; denied its use; and denied nearly every matter which from the evidence was undisputed and indisputable. No modern modification of the rules of pleading has changed the rule of the common law that "all pleadings ought to be true." Andrews' Stephen's Pleading, 478.

Whatever may be the indulgence for the filing of a general denial where that form of pleading is permissible, there can be no excuse for the specific denial of the truths of geography or the like; and in this case the practice simply aided in beclouding the denials of actually disputed matters and was apt to induce oversight. There is nothing to show that upon the request for a peremptory instruction any argument or suggestion was made of the absence of this one item of proof. The contention is not that there had been administration in fact, but that there was a failure of proof of the negative allegation. Had any such suggestion been made at the trial, the widow, who was present and a witness, could at once have been interrogated on that subject. The court charged the jury, and did not inform it that such proof was necessary. The company did not except to the charge on that account, and did not ask any instruction on that subject, although it did ask instructions on others. The company made a motion for a new trial in which no reference was made to the absence of evidence on this subject. It sued out a writ of error to the Court of Appeals in the Indian Territory and preliminary thereto it filed an assignment of errors in which no reference was made to this omission. It filed a brief in the United States Court of Appeals in the Indian Territory on July 12, 1906, in which no suggestion was made of the absence of this proof and it was asserted the case presented three phases: First, the negligence of McHaney, the gateman; second, the negligence of the servants of the Choctaw Company; and, third, the contributory negligence of the deceased coupled with the negligence of his coemployés. On August 24, 1909, having obtained leave to file a supplemental brief, the company did so and for the first time really called this question to the attention of any court, more than seven years after the accident, nearly four years after the trial, after the case had been in four courts. Cases in which assignments of error similar to this have been held sufficient have in some manner disclosed what was actually debated, tried, and determined below. In this case, on the contrary, the record contains no suggestion that the question now debated was ever raised, considered, or

decided by the trial court. On the contrary, the inevitable conclusion is that the present contention is an afterthought. It is clear that this question was never actually called to the attention of the trial court either by suggestion, inference, or otherwise, and for this court now to undertake to pass upon it would not be the exercise of the function to correct errors committed by the trial court, but would be to review a question which the trial court never passed upon and to ignore the plain teachings of the Supreme Court and of this court on the subject.

There is the less inclination to consider such a question at this time because if there had been an administrator and suit had been brought by him any judgment he might have recovered would have been for the benefit of these identical plaintiffs, and the utmost harm that can have accrued to the railroad company by failure to sooner raise this question is that the cestui que trust has secured a direct recovery instead of through the trustee.

The judgment is affirmed.