## NEW YORK LIFE INS. CO. v. REES.

Circuit Court of Appeals. Eighth Circuit.
August 21, 1926.

On Petition for Rehearing, May 19, 1927.

No. 7052.

1. Insurance ☞222—Pledge of life policy in Oklahoma by Oklahoma citizens constituted Oklahoma contract.

Pledge of life policy, made in Oklahoma, all parties being citizens of Oklahoma, was an Oklahoma contract.

2. Insurance ☞240—Contract of surrender of life policy, closed in Oklahoma, was an Oklahoma contract.

Contract of surrender of life policy, closed in Oklahoma by delivery of foreign insurer's check for the surrender value by its agent and delivery of policy to that agent was an Oklahoma contract, since the place of a contract is where the last act was done essential to the meeting of the minds.

3. Insurance ☞222—Pledgee of life policy under Oklahoma contract had no right to surrender policy without complying with Oklahoma laws (Comp. St. Okl. 1921, §§ 4123, 8200, 8201, 8204, 8205, 8210).

Where pledge and surrender of life policy to insurer were made in Oklahoma, Oklahoma statutes were part of contracts, and there was no error in charging that pledgee had no right to surrender policy without demand notice and sale as required by Comp. St. Okl. 1921, §§ 4123, 8200, 8201, 8204, 8205, 8210.

4. Estoppel ☞75—Owner clothing another with apparent power of disposition, inducing third party to deal with property to his injury, is estopped to deny ownership.

Owner clothing another with apparent title or power of disposition, whereby a third party is induced to purchase or deal with property to his injury, is estopped against the third party from denying that the apparent was not the true title.

5. Estoppel ☞75—Elements of estoppel of one clothing another with apparent power of disposition are misrepresentation, ignorance of truth, and absence of equal means of knowledge.

Indisputable elements of estoppel of one clothing another with apparent title or power of disposition are (1) intentional or careless misrepresentation of known material facts inconsistent with subsequent claim; (2) ignorance of the truth and absence of equal means of knowledge of the party claiming estoppel; (3) action by him induced by the misrepresentation; and (4) injury to him if the truth should be proved.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Estoppel.]

**6. Insurance** ⟨⟩222—**Estoppel of one making assignment of life policy to another, surrendering it to insurer, to claim it was pledge, constitutes affirmative defense.**

Estoppel of one making absolute assignment of life policy to another, who surrendered it for its surrender value, to say that the assignment was a pledge is an affirmative defense.

**7. Evidence** ⟨⟩471(2)—**Testimony of surety on debt for which policy was pledged of agreement to hold policy as security held not objectionable.**

Testimony of surety on debt to bank, for which life policy was pledged, that its officers agreed to hold policy as security for him, was not objectionable as a conclusion.

**8. Trial** ⟨⟩91—**Refusal to strike testimony given on direct examination without objection and subjected to cross-examination held not abuse of discretion.**

In action on life policy, which was assigned to bank to which assured was indebted, and surrendered to insurer by bank, brought by beneficiary, claiming that assignment was a pledge, refusing to strike out testimony of surety on the debt that he discussed the surrender value of the policy with insurer's agent, given on direct examination, without objection, and subjected to extended cross-examination, was not abuse of discretion.

**9. Appeal and error** ⟨⟩1047(1)—**Judgment will be affirmed, where rulings on evidence if erroneous, were not prejudicial.**

As concerns rulings on evidence, where rulings, if erroneous, could not have been so prejudicial as to have affected the verdict, judgment must be affirmed.

On Petition for Rehearing.

**10. Insurance** ⟨⟩222—**Beneficiary is estopped from recovering on policy, if insurer had no knowledge that assignment was pledge until paying surrender value to assignee.**

If insurer had no knowledge that assignment of policy by insured and beneficiary was a pledge, and not a sale, as evidenced by written contract, until after it had paid surrender value of policy to assignee, beneficiary was estopped from thereafter maintaining action on policy after insured's death.

**11. Pleading** ⟨⟩186—**Defendant, by silence after reply pleading denial of estoppel, joined such issue (Rev. St. Mo. 1919, § 1256).**

Under Rev. St. Mo. 1919, § 1256, providing that allegation of any matter in reply shall be deemed controverted, issue of estoppel was sufficiently pleaded by defendant by its silence, after reply expressly pleaded a denial of essential facts of estoppel and thereby tendered such issue.

**12. Estoppel** ⟨⟩110—**Defendant need not plead estoppel in order to prove it, where facts giving rise thereto were not pleaded in complaint.**

Where, in action on insurance policy, plaintiff failed to plead pledge of policy in complaint, it was not necessary that defendants plead plaintiff's estoppel to claim assignment was pledge, and not a sale, in order to be permitted to prove it, in that it had no opportunity to plead such estoppel.

**13. Estoppel** ⟨⟩115—**Party having no opportunity to disclose estoppel by plea may exhibit matter in evidence.**

If a party has no opportunity to disclose estoppel in pleading, he may exhibit the matter in evidence thereof at trial under any issue which involves the fact.

**14. Pleading** ⟨⟩404—**Omission to plead material fact is cured by tender of issue thereon by other party.**

An omission to pleading material fact is cured by tender of issue regarding it by pleading of opposite party.

**15. Pleading** ⟨⟩404—**Trial of issue tendered by pleading estops parties from subsequently denying issues were properly made.**

Trial of issue tendered by pleading, in absence of plea, answer, or replication which raises it, as though they had been pleaded, estops party from subsequently denying that issues were properly made, and from taking any advantage, in absence of such plea, answer, or replication.

**16. Principal and agent** ⟨⟩178(1)—**Notice to agent is not notice to principal, where agent does not have power to act with reference thereto.**

Rule that notice to agent constitutes notice to principal does not include agent who does not have power to act for his principal with reference to very subject-matter to which notice relates.

**17. Trial** ⟨⟩253(5)—**Instruction that insured, having paid value of policy to assignee, would not be bound, in absence of notice that assignee held policy as collateral, held erroneous, as ignoring claim of estoppel.**

Where, in action on life insurance policy, which had been assigned by insured and beneficiary and paid-up value paid to assignee, conflicting evidence on question of defendants' knowledge as to whether assignment was a pledge or sale had been introduced, refusal to charge that defendant would not be bound, in absence of showing of notice that assignee held policy as collateral, *held* erroneous, as depriving defendants of trial of claim of estoppel.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Action on policy of life insurance by Ellen M. Rees against the New York Life Insurance Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

Frank H. Sullivan and James C. Jones, Jr., both of St. Louis, Mo. (James C. Jones, Lon O. Hocker, and Eugene H. Angert, all of St. Louis, Mo., on the brief), for plaintiff in error.

Chauncey H. Clarke, of St. Louis, Mo., for defendant in error.

Before SANBORN, Circuit Judge, and MUNGER and JOHNSON, District Judges.

WALTER H. SANBORN, Circuit Judge. On February 4, 1916, the New York Life Insurance Company, by its policy of that date, insured the life of Charles A. Rees for the benefit of his wife, Ellen M. Rees, in the sum of $4,000. Mr. Rees died on October 31, 1922. About March 4, 1917, Mr. Rees was indebted to the Guaranty State Bank of Muskogee, Okl., to the amount of about $3,150, evidenced by his promissory notes, with Natt T. Wagner as surety thereon. At that time Mr. and Mrs. Rees made an absolute written assignment of the policy "and all dividend, benefit and advantage to be had or derived therefrom, subject to the conditions of the said policy and the rules and regulations of the company" to the bank, and delivered that assignment and policy to it. The policy provided that its owner was entitled on application to receive from the insurance company its cash surrender value. About January 12, 1922, that value was $769.76. The bank applied to the insurance company for this surrender value, presented and delivered to the company the policy and the written assignment of it by Mr. and Mrs. Rees to the bank, and the company paid to the bank that $769.76 and took the policy and the assignment.

After the death of Mr. Rees, Mrs. Rees, the plaintiff, brought this action against the insurance company for the $4,000 specified in the policy. The company answered that it was not liable because the plaintiff and her husband had assigned the policy to the bank, the bank had applied for and received the surrender value of the policy and had delivered up to it the assignment and the policy pursuant to its terms. Mrs. Rees replied, first, that the bank had no corporate authority to buy or sell the insurance policy and, second, that, although the written assignment of the policy to the bank was by its terms absolute, the real transaction between Mr. and Mrs. Rees and the bank, made at the time of the assignment, was a mere pledge of the policy by them to the bank to secure the indebtedness of Mr. Rees to it for about $3,150, and that the lien of the pledge had never been foreclosed by demand of payment, public notice, or proposed sale, public or private, as required by sections 4123, 8200, 8201, 8204, 8205, and 8210, of Bunn's Compiled Statutes of Oklahoma, so that the bank had never become the owner of the policy but remained a mere pledgee, without right to sell or surrender it. Upon these pleadings the case was tried to a jury, which returned a verdict for Mrs. Rees.

The court submitted to the jury the question whether the assignment from Mr. and Mrs. Rees to the bank was an absolute assignment of the policy to it or a pledge of the policy to secure the payment of the debt of Mr. Rees to the bank and charged them that, if it was an absolute assignment to the bank, then it carried with it every right the assured had in or under the policy, including the right to surrender it and to take the surrender value therefor, and that their verdict should be for the defendant; but that, if they believed and found that the bank held it merely as security for the payment of the debt due to the bank by Mr. Rees, then the defendant, the insurance company, took no better title than the bank, and they ought to find a verdict for the plaintiff. As under this charge the jury found for the plaintiff, they must have found that the transaction between Mr. and Mrs. Rees and the bank was not an absolute assignment or sale of the policy, but was a mere pledge thereof to secure the debt of Mr. Rees.

The first complaint of the insurance company of the trial in this case is that the court charged the jury that, if the transaction was a pledge and Mr. Rees did not tell the owner of the pledge or its agent to take the surrender value of the policy, the duty was imposed upon it (the owner) to make demand of Mr. Rees of the payment of the debt secured and to give notice to him, if he could be found, of a proposed sale of the property pledged in accordance with the provisions of the statutes of Oklahoma, and that, in the absence of such demand and notice and compliance with the statutes, the bank never acquired the ownership of the pledged property or the right to surrender the policy. Counsel cite many authorities in support of the general rule that a pledgee of an insurance policy may under various circumstances and laws rightfully take the surrender value of and surrender the pledged policy. The court below, however, was of the opinion that, notwithstanding the law and the rules governing under other circumstances and under various statutes the rights of pledgor and pledgee, the rights of the parties in this case must be governed and enforced in accordance with the statutes of the state of Oklahoma. Those statutes provided:

"The sale by a pledgee of property pledged must be made by public auction." Section 8204.

"A pledgee cannot sell any evidence of debt pledged to him, except the obligations of governments, states or corporations." Section 8205.

"A pledgee must give actual notice to the pledgor of the time and place at which the property pledged will be sold, at such reason-

able time before the sale as will enable the pledgor to attend." Section 8201.

And section 4123 provided that: "No bank shall employ its moneys, directly or indirectly, in trade or commerce, by buying or selling goods, chattels, wares or merchandise: * * * Provided, that it may sell any personal property which may come into its possession as collateral security for any debt or obligation due it, upon posting a notice in five public places in the county wherein the property is to be sold, at least ten days before the time therein specified for such sale, and which said notice shall contain the name of the bank and the name of the pledgor, the date of the pledge, the nature of the default and the amount claimed to be due thereon at the date of the notice; a description of the pledged property to be sold and the time and place of sale."

[1, 2] At the time the pledge was made, and at the time the contract of surrender of the policy was made, Mr. and Mrs. Rees were citizens and residents of Oklahoma, the Guaranty State Bank was a corporation of the state of Oklahoma, and the defendant, the insurance company, was a corporation of the state of New York. The contract or pledge was an Oklahoma contract; it was made in Oklahoma, and all the parties to it were citizens of Oklahoma. The contract of surrender was also an Oklahoma contract; it was made by a written request in January, 1922, by the Guaranty Bank for the surrender value of the policy which was granted by the insurance company; and the contract was closed in Oklahoma by the delivery of the insurance company's check for the surrender value of the policy by its agent in Oklahoma to the Guaranty Bank and the latter's acceptance thereof and its delivery of the policy to that agent in the state of Oklahoma. The test of the place of a contract is the place at which the last act was done essential to the meeting of the minds of the parties. Clark v. Belt, 223 F. 573, 577, 138 C. C. A. 1; Northwestern Mut. Life Ins. Co. v. McCue, 223 U. S. 234, 247, 32 S. Ct. 220, 56 L. Ed. 419, 38 L. R. A. (N. S.) 57. The last act in this case was done in the state of Oklahoma.

[3] As these contracts were made in the state of Oklahoma, the statutes of Oklahoma relating to such pledges were as much parts of these two agreements as if they had been written into them (Armour Packing Co. v. United States, 153 F. 1, 19, 82 C. C. A. 135, 14 L. R. A. [N. S.] 400); and there was no error in the charge of the court that the failure of the owners of the pledge to comply with the statutes of Oklahoma as to demand, notice, and sale, left the right of the bank that of a mere pledgee without ownership or right to convey or surrender the policy without first demanding payment of the debt and making sale of the property at public auction after the notices provided by the statutes.

[4, 5] The next contention of counsel for the insurance company is that the plaintiff as against it is estopped by the absolute assignment of the policy, which she and her husband signed and delivered to the bank and in reliance upon which it paid the surrender value of the policy, from claiming or defending on the ground that the assignment was a mere pledge and that the court erred in its charge that the insurance company had no better title than the bank. The general rule of law that the owner of property who clothes another with the apparent title or power of disposition of it whereby a third party is induced to purchase or deal with it to his injury is estopped as against the latter from denying that the apparent was not the true title is familiar and indisputable. Indispensable elements of such an estoppel are (1) intentional or careless misrepresentation of known and material facts inconsistent with the subsequent claim of the party who invokes the misrepresentation; (2) ignorance of the truth and absence of equal means of knowledge of the party who claims the estoppel; (3) action by the latter, induced by the misrepresentation; and (4) injury to the latter if the truth be permitted to be proved.

[6] It may be that, if the defendant had pleaded as a defense to this action (1) that the plaintiff and her husband intentionally or carelessly by their assignment of the policy misrepresented the pledge they made to secure Mr. Rees' debt to be an absolute assignment of the policy; (2) that the insurance company was ignorant of that fact and of the truth and without equal means of knowledge of it, (3) that it acted in reliance upon the misrepresentation; and (4) thereby was induced to pay out the $769.76, the surrender value of the policy, to its injury in that or any other substantial amount; and if it had proved the facts thus pleaded, it would have been error for the court to have instructed the jury that, if the transaction between Mr. and Mrs. Rees and the bank was a pledge, the insurance company had no better title to or equity in the policy than the bank.

Such an estoppel, however, is an affirmative defense; it ought to be pleaded; an opportunity ought to be given to the plaintiff to deny the allegations of its existence and to produce evidence in support of its denial if such an estoppel is relied upon. No such de-

fense was pleaded in this case. The plaintiff alleged the existence of the policy, the death of Mr. Rees, that the plaintiff was the beneficiary, and that the company had failed to pay the insurance. The defendant answered that Mr. and Mrs. Rees had made the written assignment of the policy to the bank, attached a copy of it to its answer, that the bank had surrendered the policy to the insurance company, and it had paid $769.76, the surrender value thereof therefor. It answered nothing more; it pleaded nothing more, nothing else. The plaintiff replied, among other things, that the policy was never in reality sold or assigned to the bank, but was merely pledged to it to secure a debt of Mr. Rees, and that the pledge had never been redeemed or foreclosed. The defendant made no motion to amend its answer or to plead an estoppel, and the case was tried on the issues which these pleadings presented. When the trial ended, the evidence was substantial and preponderant that the actual transaction between Mr. and Mrs. Rees and the bank was a pledge and not a sale or an absolute assignment of the policy.

Thereupon, the insurance company made a motion that the court instruct the jury to return a verdict in its favor, which the court denied. It then presented several requests for instructions to the jury, which were denied. The first of these instructions presented in the record was that the assignment was unlimited in its terms, that its legal effect was to transfer to the bank every right and benefit either Mr. or Mrs. Rees had under the terms of the policy, including the right to surrender the policy, and that, as the bank had acted under this assignment in surrendering the policy, the jury should return a verdict for the defendant. This request was properly denied, because the evidence was so persuasive and preponderant at that time that the transaction when the written assignment was made was a pledge and not an absolute assignment that the court could not take that question from the jury in that way. But the request for the instruction demonstrates the fact that at that time the insurance company still adhered to the defense which it had pleaded in its answer that the assignment was absolute and effective, and neither in that request nor in any other request for instructions, found in the record before the court delivered its charge, did the defendant present the defense of an estoppel of the plaintiff from enforcing its claim for the reasons now urged.

After the court had delivered its charge to the jury and after counsel for the defend-

19 F.(2d)—50

ant had taken four exceptions thereto and made a request for another instruction to the jury, which was denied, this colloquy was had:

Mr. Sullivan, counsel for the defendant: "In connection with that we ask your honor to charge the jury that the defendant would not be bound, in view of the terms of this assignment, by the state of affairs between Rees and the bank, with respect to the bank's right to surrender the policy, in the absence of some showing of notice to us that the bank held the policy as collateral security."

This was as near as the defendant came at this trial to presenting effectually by pleading and proof the defense of a personal estoppel of the plaintiff from presenting and enforcing her claim under its policy, and it came so late and was so obscure and so inconsistent with the defense pleaded and tried that there was no error in the refusal of the court to submit it to the jury. Choctaw O. & G. R. Co. v. Jackson, 192 F. 792, 801, 114 C. C. A. 12; Louisville & N. R. Co. v. Womack, 173 F. 752, 759, 97 C. C. A. 559.

[7] There were other complaints of this trial. Natt T. Wagner, a witness for the plaintiff, who was surety on the debt of Rees to the bank which the policy was pledged to secure, testified that in 1921 he had a conversation with Edmondson, the vice president of the bank, in which the latter agreed to hold the policy as security for him as surety so that, if he paid the debt of Rees, he might have the benefit of that security. The only objection to this testimony at the time of its admission was that it was a conclusion, and that objection was baseless.

[8] Wagner also testified on his direct examination that, "wanting to know what the loan value of the policy was at that time, I discussed the matter with Mr. Gaddy, the agent of the New York Life Company, asking him what the loan value of the policy would be, anticipating I would have the notes all paid up within reasonable length of time. Mr. Gaddy informed me approximately what the loan value of the policy would be. As I stated before, there was hardly ever two or three months elapsed when I passed—" At this point counsel for the defendant said: "I object to that, you were not asked that." And the court said to the witness: "No; do not tell that." Counsel for the defendant in his cross-examination drew out of the witness Wagner his testimony that Gaddy was the special agent and the general agent of the defendant in its Oklahoma City office in Eastern Oklahoma, that he solicited insurance for it and settled claims and attended to all busi-

ness in Eastern Oklahoma and handled all claims necessary to be settled out of the Oklahoma City office, and that the defendant sent the check for the surrender value of the insurance policy to Gaddy to deliver to the bank. At the close of this cross-examination, counsel for the defendant made a motion to strike out the testimony of Wagner in his direct examination which had been received without objection to the effect that he asked Gaddy what the loan value of the policy was, discussed the matter with him, and Gaddy told him about what it was, and the court denied the motion, and the defendant excepted. Counsel have exhaustively argued that this was a fatal error. But after the receipt of this evidence on direct examination without objection, and after extended cross-examination upon it, the grant or the denial of the motion to strike it out rested in the sound discretion of the court, and it does not seem to us that it committed any abuse of that discretion in its denial of the motion. Again, if it had been error to deny the motion, it would not have been a fatal or prejudicial error, but a harmless one. As we have shown the only issue of fact under the pleadings, the course of the trial, and the evidence which this evidence could have affected was the issue of sale or pledge of the policy, and there was no evidence of a sale of the policy but the written agreement, while all the witnesses, those for the plaintiff and those for the defendant, who knew and testified to the facts decisive of that issue, testified that it was a pledge and not a sale, and there is no doubt in our minds that, if this conversation between Wagner and Gaddy had been stricken out, the verdict of the jury would have been the same that it was with it in.

[9] There were other alleged errors in the rulings on the admission and exclusion of evidence, but a studious examination of each of them has convinced that none of them if erroneous could have been so prejudicial to the defendant as to have affected in any way the verdict against it in this case, and our conclusion is that the judgment must be affirmed.

### On Petition for Rehearing.

One of the reasons for a rehearing of this case urged by the insurance company, the defendant, was that this court erroneously held that the issue whether or not the plaintiff, Mrs. Rees, was estopped from recovering in this action, upon which issue evidence had been received from each of the parties during the trial, could not be considered by this court or the court below, because that estoppel had not been pleaded by the defendant. The question thus presented has again been briefed by counsel and considered by the court. The facts which condition the answer to this question are these.

The defendant issued its policy for $4,000 on February 4, 1916, to Charles A. Rees, insuring his life for the benefit of his wife, the plaintiff. On March 5, 1917, the plaintiff, Ellen M. Rees, and her husband, Charles A. Rees, made and delivered to the Guaranty State Bank of Muskogee, Okl., a written assignment of this policy "and," as the assignment reads, "all dividend, benefit, and advantage to be had or derived therefrom." Mr. Rees died on October 31, 1922. The policy provided that the insured therein, after premiums for two years had been paid, might surrender the policy and receive the surrender value thereof. Pursuant to this provision of the policy the bank about January 12, 1922, presented the policy and the written assignment of Mr. and Mrs. Rees to the defendant, demanded and received from it the surrender value of the policy $769.76, and the bank delivered to the defendant the policy and the assignment.

[10] The actual transaction, however, between Mr. and Mrs. Rees at the time they made the assignment was claimed by the plaintiff to be a pledge by them of the policy to the bank to secure a debt Mr. Rees owed the bank. But the defendant claimed and still claims that it never had any notice or reasonable cause to believe or suspect that the transaction was a pledge, and not the sale which the written contract evidences, until long after it had paid the surrender value of the policy to the bank, and received therefor the surrender of the policy and the assignment to the bank. If this claim of the defendant was well founded in fact, then there can be no doubt that the plaintiff was estopped from maintaining this action and recovering upon the policy. Barnes v. Union Pacific Ry. Co. (C. C. A.) 54 F. 87, 89; Given v. Times-Republican Prtg. Co. (C. C. A.) 114 F. 92, 94, 95, and cases there cited.

We turn to the averments of the pleadings pertinent to the necessity of pleading this estoppel. In her complaint the plaintiff alleged the issuance of the policy, the payment of the premiums, the death of Mr. Rees, the proof of his death to the defendant, and her demand for the payment by the insurance company of the $4,000. In her complaint she made no averment concerning her assignment or pledge of the policy. The answer to this complaint by the defendant was that the plaintiff and her husband had made and delivered the written assignment to the bank, that

the bank had presented to the defendant the policy and the assignment and demanded the surrender value of the policy, and that the defendant had paid that value to the bank and received therefor the surrender of the policy and the written assignment, and that all this had been done before the death of Mr. Rees. To this answer the plaintiff filed her reply. In that reply for the first time she alleged that the transaction between Mr. and Mrs. Rees and the bank at the time they made and delivered their written assignment of the policy was a pledge to secure a debt of Mr. Rees to the bank, and not a sale, as they had represented it to be by their written assignment. She further alleged in her reply that at the time of the surrender of the policy to the defendant by the bank the "defendant knew, or by the exercise of ordinary care would have known, that said bank held said policy of insurance as lienholder only, and that therefore said bank as lienholder had no authority or right to make said surrender of said insurance policy prior to the maturity of said policy by the death of the insured therein."

[11] (1) By these averments of the reply the plaintiff expressly pleaded a denial of the essential fact of the estoppel, the lack of notice to the defendant or knowledge of the pledge at the time of the surrender of the policy, and thereby expressly tendered the issue to the defendant estoppel vel non, and the defendant by virtue of the statute of Missouri and its mere silence joined that issue, and the estoppel was sufficiently pleaded. That statute declared that "the allegation of new matter in the reply shall be deemed controverted by the adverse party, as upon a direct denial or avoidance." Revised Statutes of Missouri 1919, § 1256.

[12, 13] (2) It was not necessary in this case for the defendant to plead the estoppel in order to be permitted to prove it, because the pledge was not pleaded by the plaintiff in the complaint, nor until the reply came in, so that the defendant had no opportunity to plead the estoppel. If a party has no opportunity to disclose the estoppel by pleading, he may exhibit the matter thereof in evidence at the trial under any issue which involves the fact. Philadelphia, Wilmington, etc., R. R. Co. v. Howard, 13 How. (54 U. S.) 307, 334, 335, 14 L. Ed. 157; Shelton v. Southern Ry. Co. (D. C.) 255 F. 182, 185; Lord v. Bigelow, 8 Vt. 445, 448; Wood v. Jackson, 8 Wend. (N. Y.) 36, 22 Am. Dec. 603; Babcock v. United Railways Co., 158 Mo. App. 275, 283, 284, 138 S. W. 53; Powell v. Tinsley, 137 Mo. App. 551, 559, 560, 119 S. W. 47. In the case last cited Judge Goode, whose knowledge of the

law and the rules of pleading and practice in Missouri was exceeded by few, if any, said: "Counsel for defendant insists plaintiffs lost the estoppel by not pleading it; but, inasmuch as they had no opportunity to do so, this position is untenable. Their petition stated a cause of action and their evidence sustained it. Defendant answered by a general denial and introduced his mortgage to show he was entitled to keep the property as against plaintiffs. Testimony was introduced by plaintiffs in rebuttal, and without objection, to show defendant was not entitled, because he had declared his mortgage had been satisfied, and on the faith of the declaration plaintiffs had taken their indemnity. As the case took a course which afforded no opportunity to plead the estoppel, it was available on the evidence. Ess v. Griffith, 139 Mo. 322, 332 [40 S. W. 930]; Clink v. Thurston, 47 Cal. 21; Foye v. Patch, 132 Mass. 105; Gans v. Insurance Co., 43 Wis. 108 [28 Am. Rep. 535]; Bigelow, Estoppel (5th Ed.) note 3, p. 698."

[14] (3) Even if, in order to prove that the defendant had any notice or knowledge of or reason to suspect that the transaction between Mr. and Mrs. Rees and the bank was a pledge and not a sale at the time it paid the surrender value to the bank, it was necessary for the defendant to plead that fact, as in our opinion it was not, the averment of the reply quoted cured that defect and rendered such pleading unnecessary. An omission to plead a material fact is cured by the tender of an issue regarding it by the pleading of the opposite party. Texas & N. O. R. R. Co. v. Miller, 221 U. S. 408, 413, 31 S. Ct. 534, 55 L. Ed. 789; Cole v. Ralph, 252 U. S. 286, 290, 40 S. Ct. 321, 64 L. Ed. 567; Henry v. Sneed, 99 Mo. 407, 423, 424, 12 S. W. 663, 17 Am. St. Rep. 580; Garth v. Caldwell, 72 Mo. 622, 629, 630; Slack v. Lyon (Mass.) 9 Pick. 62.

[15] (4) The trial of the issues tendered by a pleading, in the absence of a plea, answer or replication which raises them, as though they had been thus pleaded, estops the parties from subsequently denying that the issues were properly made and from taking any advantage of the absence of such plea, answer, or replication. Bank of Havelock v. Western Union Tel. Co. (C. C. A.) 141 F. 522, 528; Keator Lumber Co. v. Thompson, 144 U. S. 434, 437, 12 S. Ct. 669, 36 L. Ed. 495; North Chicago St. Ry. Co. v. Burnham (C. C. A.) 102 F. 669, 671; Schuster v. Carson, 28 Neb. 612, 615, 44 N. W. 734; Wright v. Waddell, 89 Iowa, 350, 364, 56 N. W. 650; Anderson v. Independent School District (C. C.) 78 F. 750, 751; Loomis v. Riley, 24 Ill. 307, 309; Clark v. City of Austin, 38 Minn. 487, 38 N.

W. 615. And the issue of the estoppel of the plaintiff was tried by the evidence and arguments of counsel on each side in the trial under consideration. The negotiation of the surrender of the policy and the written assignment to the defendant was conducted by letters introduced in evidence between the bank, or its agents in the West, and the officers of the defendant in New York City, and, after the terms were agreed upon in that way, the defendant drew its check in New York, payable to the bank, for the amount of the surrender value of the policy, and mailed it to its local agent in Oklahoma, who delivered it to the bank. On the question of estoppel the defendant introduced in evidence without objection the testimony of its three officers, who conducted and closed the negotiation of the surrender of the policy and the assignment, to the effect that neither of them nor the defendant had any notice or knowledge of the pledge until long after the surrender was made and the surrender value was paid to the bank. On the other hand, the plaintiff, Mrs. Rees, offered evidence, which her counsel claim was competent, to show that the defendant had notice of the pledge through its local agent in Oklahoma. This evidence, to be sure, was strenuously objected to by counsel for the defendant as incompetent; but it was finally admitted over the objections of the defendant, and its counsel took an exception to the ruling. It remained in the case throughout the trial, and was not withdrawn before it was submitted to the jury.

[16] We will not prolong this opinion to discuss the relevancy and materiality of this evidence introduced by the plaintiff and so strenuously objected to by the defendant, except to call attention, in view of the next trial, to the rule that the proposition that notice to the agent is notice to the principal does not include an agent who does not have the power to act for his principal with reference to the very subject-matter to which the notice relates, in this case to the decision whether or not the defendant should make and perform the contract of surrender of the policy for the surrender value thereof. "A principal is not affected with knowledge which the agent acquires while not acting in the course of his employment, or which relates to matters not within the scope of his authority, unless the agent actually communicates his information to the principal." 2 C. J. 863.

The record, however, discloses the facts which we have recited, and shows that each of the parties to this action introduced evidence and participated in the trial of this issue of estoppel of the plaintiff without objec-

tion that it was not pleaded. The briefs, arguments, and authorities of counsel for the plaintiff, not excepting the opinions in Laughlin v. Wells (Mo. Sup.) 283 S. W. 990, 992, and Sanders v. Chartrand, 158 Mo. 352, 59 S. W. 95, and in other cases, have received consideration; but, for the reasons which have now been stated, we have concluded that the issue of the estoppel of the plaintiff by her assignment and delivery of the policy to the bank could not lawfully be disregarded in this action by the court below, or by this court, because it was not pleaded.

[17] When at the trial all the evidence had been introduced, when the written requests to charge had been considered and ruled upon, and the judge had charged the jury, he turned to Mr. Clarke, counsel for the plaintiff, and said that, if he had any objections or exceptions, or required any farther charge, he should be glad to have them suggested. Mr. Clarke made a few suggestions and the judge disposed of them. Mr. Sullivan was the attorney of the defendant and the judge then said, "Is there anything on your side, Mr. Sullivan?" Mr. Sullivan took some exceptions to some parts of the charge which the court had given, requested the court to give a certain charge which he declined to give, and then requested him to charge the jury "that the defendant would not be bound, in view of the terms of this assignment, by the state of affairs between Rees and the bank, with respect to the bank's right to surrender the policy, in the absence of some showing of notice to us that the bank held the policy as collateral security."

The court refused to give this request, and the defendant's counsel excepted. This ruling was assigned as error by the defendant. It had the effect of withdrawing from the consideration of the jury and from the trial the issue whether the defendant had any notice or knowledge of the pledge at the time it bought the surrender of the policy in reliance upon the written assignment, although the court had admitted conflicting evidence on that issue. Counsel for the plaintiff argues that the main issue in the case was whether the transaction between the plaintiff and her husband with the bank was a sale or a pledge, that the issue of notice to and knowledge of the defendant of the pledge when it bought the surrender of the policy was negligible, and that the request to charge came too late. But, in view of the record of the trial, of the conflicting evidence on the question of notice or knowledge of defendant of the pledge, and of the request of the judge to the attorneys, made after the general charge, for further sugges-

tions or requests, this argument has not proved persuasive to our minds. There seems to us to be no logical or lawful way of escape from the conclusion that, in refusing this request of counsel for the defendant, the court fell into a fatal error, which deprived the defendant of a fair trial of its claim of an estoppel of the plaintiff from maintaining this action.

The judgment below must accordingly be reversed, and the case must be remanded to the court below, with directions to grant a new trial; and it is so ordered.